# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 8, 2012 Session at Memphis

## MORGAN KEEGAN & COMPANY, INC. v. WILLIAM HAMILTON SMYTHE III ET AL.

**Appeal by Permission from the Court of Appeals, Western Section**
**Chancery Court for Shelby County**
**No. CH092353      Walter L. Evans, Chancellor**

---

**No. W2010-01339-SC-R11-CV - Filed April 25, 2013**

---

This case requires us to decide whether Tennessee's appellate courts possess subject matter jurisdiction to review a trial court's order that vacates an arbitration award and remands the dispute to a new arbitration panel without expressly declining to confirm the award. An investor pursued a claim against an investment company over losses he incurred due to the failure of some of the company's bond funds. After a Financial Industry Regulatory Authority arbitration panel ruled in the investor's favor, the investment company petitioned the Chancery Court for Shelby County to vacate the award based on its belief that two members of the arbitration panel were biased. The trial court, without expressly declining to confirm the award, vacated the award and remanded the case for a second arbitration before a new panel. The investor appealed. The Court of Appeals, on its own motion, dismissed the appeal on the ground that it lacked subject matter jurisdiction. *Morgan Keegan & Co. v. Smythe*, No. W2010-01339-COA-R3-CV, 2011 WL 5517036, at *8 (Tenn. Ct. App. Nov. 14, 2011). We granted the investor's application for permission to appeal and now reverse the judgment of the Court of Appeals because the trial court's order is, in fact, an appealable order "denying confirmation of an award" under Tenn. Code Ann. § 29-5-319(a)(3) (2012).

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed and Remanded**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which GARY R. WADE, C.J., CORNELIA A. CLARK, and SHARON G. LEE, JJ., joined. JANICE M. HOLDER, J., not participating.

Jef Feibelman, David E. Goodman, Jr., and Mary C. Hamm; Christopher S. Campbell, and Laura S. Martin, Memphis, Tennessee; Dale Ledbetter, Fort Lauderdale, Florida, for the

appellants, William Hamilton Smythe III, William H. Smythe IV Trust, and Smythe Children's Trust.

John S. Golwen, William G. Whitman, and Annie T. Christoff, Memphis, Tennessee, for the appellee, Morgan Keegan & Company, Inc.

**OPINION**

**I.**

The sole issue in this case focuses on the subject matter jurisdiction of the Court of Appeals. Even though we are not concerned with the merits of the underlying substantive dispute between the parties, we provide the following facts in order to frame the jurisdictional discussion.

William Smythe III owned various investment accounts at Morgan Keegan & Company, Inc. ("Morgan Keegan"), including several accounts for which he served as trustee for other members of his family. The documents creating these accounts contained provisions requiring that disputes between Mr. Smythe and Morgan Keegan be resolved using arbitration procedures established by the Financial Industry Regulatory Authority ("FINRA").[1]

A portion of Mr. Smythe's portfolio included investments in Morgan Keegan's "Regions Morgan Keegan" ("RMK") family of funds. These funds invested in "junk bonds" – below investment grade securities that offered the potential of high rates of return but with a higher degree of risk. According to expert testimony presented during the arbitration proceeding, these funds "collapsed spectacularly in 2007," thus living up to their name and costing investors billions of dollars. The failure of its RMK funds has generated a substantial amount of litigation for Morgan Keegan.[2]

On April 30, 2008, Mr. Smythe initiated a FINRA arbitration proceeding against Morgan Keegan. This procedure was conducted in accordance with FINRA's Code of

---

[1]FINRA is an independent, non-governmental organization established by the securities industry to self-regulate securities firms doing business in the United States. *See* FINRA, *About the Financial Industry Regulatory Authority*, FINRA.ORG, http://www.finra.org/AboutFINRA (last visited Apr. 9, 2013).

[2]To date, there have been over 170 FINRA arbitrations concerning Morgan Keegan's RMK funds. *See* FINRA, *FINRA Arbitration Awards Online*, FINRA.ORG, http://finraawardsonline.finra.org/search.aspx (search "RMK" and accept terms of use) (last visited Apr. 9, 2013).

Arbitration Procedure for Customer Disputes ("FINRA Code").[3] A crucial step in the process was the selection of the members of the arbitration panel.[4] For disputes exceeding $100,000, the panel is composed of three members: a "non-public" arbitrator, a public arbitrator, and a chairperson who is an experienced public arbitrator.[5] Non-public arbitrators are industry insiders with professional experience in securities, commodities, or futures.[6] Public arbitrators are persons who lack recent professional experience in the investments industry and who have no immediate family members in that industry.[7]

FINRA supplies each party with a list of ten randomly generated arbitrators for each position on the panel.[8] Each party may strike up to four potential arbitrators from each list, and each party must rank the remaining arbitrators in order of preference.[9] FINRA then combines the ranked arbitrator lists and populates the panel with the highest-ranked available arbitrator from the combined list.[10]

In order to assist the parties in their decisions regarding the exclusion of potential arbitrators and in ranking the remaining arbiters, the FINRA Code requires disclosure of biographical information for each potential arbitrator, including potential conflicts of interest and other relevant disclosures.[11] The dispute in this case centers on the alleged failure of two

---

[3]*See FINRA Code of Arbitration Procedure for Customer Disputes*, FINRA.ORG, http://www.finra.org/ArbitrationAndMediation/Arbitration/Rules/CodeofArbitrationProcedure/index.htm (last visited Apr. 9, 2013).

[4]*See* FINRA Code §§ 12400-12410.

[5]*See* FINRA Code §§ 12401(c), 12403.

[6]*See* FINRA Code § 12100(p).

[7]*See* FINRA Code § 12100(u).

[8]*See* FINRA Code § 12403(c).

[9]*See* FINRA Code § 12403(c)(3).

[10]*See* FINRA Code § 12403(c)(4) & (5).

[11]*See* FINRA Code § 12405. The FINRA Code provides that before arbitrators are appointed to a panel, FINRA alerts them to the nature of the dispute and the identities of the parties. Potential arbitrators have a duty to investigate and disclose to FINRA "any circumstances which might preclude the arbitrator from rendering an objective and impartial determination." Such circumstances include, among other things, any financial or personal interest in the dispute, and any current or past relationship with any party, any party's representative, or any potential witness in the proceeding. FINRA Code § 12405(a). This obligation to disclose "interests, relationships, or circumstances" that might taint the arbitrator's objectivity is a
(continued...)

arbitrators to disclose potential conflicts of interest under FINRA Code § 12405(a) and to recuse themselves under FINRA Code § 12406 or FINRA's failure to remove them under FINRA Code § 12407.

After Mr. Smythe filed his arbitration claim against Morgan Keegan, both parties participated in the arbitration selection procedure. A three-arbitrator panel was assembled on October 2, 2008; however, FINRA replaced the chairperson of the panel on February 19, 2009. On August 10, 2009, the non-public member of the panel supplemented his disclosure report to Mr. Smythe and Morgan Keegan. This information enabled Morgan Keegan to discover that this panel member was a broker for a firm that was also suing Morgan Keegan over the RMK funds and that the firm was being represented by the same lawyer who was representing Mr. Smythe.

In October 2009, Morgan Keegan requested that the non-public arbitrator recuse himself and alternatively asked FINRA's director to remove this arbitrator from the panel. By this time, the non-public arbitrator had served on two other FINRA arbitration panels involving Morgan Keegan's RMK funds that had awarded damages against Morgan Keegan. In both of these proceedings, the non-public arbitrator had heard expert testimony to the effect that the RMK funds were fundamentally flawed and unfit for any investor. Thus, by the time Mr. Smythe's claim was ready to be heard, the non-public arbitrator had already received damaging information about the RMK funds in two previous arbitrations and had ruled against Morgan Keegan in both. Morgan Keegan's requests for recusal and removal of the non-public arbitrator were denied.

Morgan Keegan also objected to the panel's chairperson. The chairperson had previously chaired an arbitration proceeding involving RMK funds in which the panel made the rare move of imposing punitive damages against Morgan Keegan. This was the only arbitration involving RMK funds that resulted in a punitive damages award. Morgan Keegan's request for the removal of the chairperson was also denied.

The FINRA arbitration regarding Mr. Smythe's complaint against Morgan Keegan was conducted from November 2 through November 6, 2009. On November 11, 2009, the arbitration panel awarded Mr. Smythe $697,000 in compensatory damages, as well as $195,160 in attorneys' fees and $20,000 in witness fees.

---

[11](...continued)
"continuing duty" that requires arbitrators to disclose to FINRA any potential conflicts that come to light after the arbitrator is assigned to the panel. FINRA Code § 12405(b). FINRA then shares the disclosed information with the parties. FINRA Code § 12405(c).

On November 25, 2009, Morgan Keegan filed a petition in the Chancery Court for Shelby County, asserting that the arbitration award to Mr. Smythe should be vacated because of the "evident partiality" of the non-public arbitrator and the chairperson of the arbitration panel.[12] Mr. Smythe did not file a petition to confirm the award, as permitted by Tenn. Code Ann. § 29-5-312 (2012). However, on February 11, 2010, he filed a written response to Morgan Keegan's petition in which he requested not only that the trial court deny Morgan Keegan's petition, but also "that the Award, rendered on November 11, 2009, by FINRA Dispute Resolution be confirmed in accordance with Tenn. Code Ann. § 29-5-313(a)."[13] During oral argument before the trial court on February 25, 2010, Mr. Smythe's attorney again urged that the "award for the Smythes . . . should be upheld."

The trial court ruled from the bench at the conclusion of the February 25, 2010 hearing. The trial court concluded that the non-public arbitrator was "draped with the cloak of bias and prejudice" against Morgan Keegan and that "a reasonable person" would conclude that the panel's chairperson and the non-public arbitrator would be unfairly "predisposed to view any acts in the light most damaging to [Morgan Keegan] because of their previous hearing and conclusions [in] other matters involving Morgan Keegan." Thus, the trial court held that "the process should be replayed."

The trial court confirmed its bench ruling in a written order filed on March 16, 2010. The order, drafted by Morgan Keegan's lawyer and approved by Mr. Smythe's counsel, found that "there was evident partiality" by the non-public arbitrator and the chairperson of the panel and that the award in Mr. Smythe's favor "should be and is vacated and is remanded back to FINRA for a new hearing for all of those specific reasons that [Morgan Keegan] raised as constituting bias and prejudice, all of which this Court hereby finds and adopts."

Mr. Smythe appealed. On March 24, 2011, the Court of Appeals, on its own motion and apparently without additional briefing, filed an opinion dismissing the appeal on the ground that the court lacked subject matter jurisdiction under the Tennessee Uniform

---

[12]9 U.S.C.A. § 10(a)(2) (West 2009) and Tenn. Code Ann. § 29-5-313(a)(1)(B) (2012) authorize the court to vacate an arbitration award upon proof of the "evident partiality" of the arbitrator.

[13]Mr. Smythe's reference to Tenn. Code Ann. § 29-5-313(a) as authority to confirm his arbitration award is abstruse. Tenn. Code Ann. § 29-5-313 governs the vacatur of awards. Confirmation of arbitration awards is governed by Tenn. Code Ann. § 29-5-312 (2012).

Arbitration Act[14] to adjudicate Mr. Smythe's appeal.[15]  Mr. Smythe filed a petition for rehearing, arguing that the appeal provisions of the Federal Arbitration Act[16] preempted inconsistent appeal provisions in the Tennessee Uniform Arbitration Act and that the Federal Arbitration Act provided a broader basis for jurisdiction than the Tennessee Uniform Arbitration Act.  The Court of Appeals withdrew its original opinion on May 19, 2011, and accepted additional briefs from both parties on the jurisdictional issue.

In a second opinion issued on November 14, 2011, the Court of Appeals again decided that it lacked subject matter jurisdiction over Mr. Smythe's appeal.  *Morgan Keegan & Co. v. Smythe*, No. W2010-01339-COA-R3-CV, 2011 WL 5517036 (Tenn. Ct. App. Nov. 14, 2011).  The court first decided that it lacked jurisdiction under Tenn. Code Ann. § 29-5-319(a)(3)[17] because the trial court's March 16, 2010 order did not expressly confirm or deny the arbitration award.  *Morgan Keegan & Co. v. Smythe*, 2011 WL 5517036, at *8.  The court also decided that it lacked jurisdiction under Tenn. Code Ann. § 29-5-319(a)(5)[18] because the trial court ordered a rehearing of the arbitration.  *Morgan Keegan & Co. v. Smythe*, 2011 WL 5517036, at *9-10.

In addition to these statutory grounds, the Court of Appeals decided that the Federal Arbitration Act applied to the proceeding because the underlying transaction involved interstate commerce.  The court also held that the appeal provisions in the Tennessee Uniform Arbitration Act were not preempted by the Federal Arbitration Act because they were procedural rather than substantive.  *Morgan Keegan & Co. v. Smythe*, 2011 WL 5517036, at *11-17.  The court also declined to find the trial court's order appealable on the basis of Tenn. R. App. P. 2's "good cause" provision.  *Morgan Keegan & Co. v. Smythe*, 2011 WL 5517036, at *18.  The parties have not joined issue with regard to this final holding in this appeal.

We accepted Mr. Smythe's appeal.  Because we determine that Tenn. Code Ann. § 29-5-319(a)(3) confers appellate jurisdiction on the Court of Appeals in this case, we reverse the

---

[14]Tenn. Code Ann. §§ 29-5-301 to -320 (2012).

[15]Courts have the responsibility to address their own subject matter jurisdiction, even when the parties have not raised the issue.  Tenn. R. App. P. 13(b).

[16]9 U.S.C.A. §§ 1-16 (West 2009).

[17]Tenn. Code Ann. § 29-5-319(a)(3) authorizes appeals from orders "confirming or denying confirmation of an award."

[18]Tenn. Code Ann. § 29-5-319(a)(5) authorizes appeals from orders "vacating an award without directing a re-hearing."

decision of the Court of Appeals and remand the case to the Court of Appeals to address the substantive merits of the issues properly raised by the parties.

## II.

Whether a court has subject matter jurisdiction over a case is a question of law that we review de novo with no presumption of correctness. *Word v. Metro Air Servs., Inc.*, 377 S.W.3d 671, 674 (Tenn. 2012) (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). Likewise, whether a state statute or common-law cause of action is preempted by federal law is a question of law that we review de novo. *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010).

The appellate courts' subject matter jurisdiction over this appeal is governed by a statute, and

> our role in construing a statute is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. To do this, we focus initially on the statute's words, giving these words their natural and ordinary meaning in light of their statutory context. We avoid any forced or subtle construction that would limit or extend the meaning of the language. Every word in a statute is presumed to have meaning and purpose. If the statutory language is clear and unambiguous, we apply the statute's plain language in its normal and accepted use. We need look no further than the statute itself, enforcing it just as it is written.

*Keen v. State*, No. W2011-00789-SC-R11-PD, __ S.W.3d __, __, 2012 WL 6631245, at *12 (Tenn. Dec. 20, 2012) (internal citations and quotation marks omitted); *see also Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. *Leggett v. Duke Energy Corp.*, 308 S.W.3d at 851-52 (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008)).

## III.

Until relatively recent times, American courts have been reluctant to recognize the validity of arbitration agreements in private contracts. *See Buraczynski v. Eyring*, 919 S.W.2d 314, 317 (Tenn. 1996); *Cavalier Ins. Corp. v. Osment*, 538 S.W.2d 399, 403 (Tenn. 1976). However, this Court has now acknowledged that both the Federal Arbitration Act and the Tennessee Uniform Arbitration Act were adopted (1) "to promote private settlement of

disputes," *Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 257 (Tenn. 2010) (quoting *Arnold v. Morgan Keegan & Co.*, 914 S.W.2d 445, 448 n.2 (Tenn. 1996)), and (2) to ensure the enforceability of private agreements to arbitrate. *Taylor v. Butler*, 142 S.W.3d 277, 281 (Tenn. 2004). Accordingly, arbitration agreements in private contracts are now favored in Tennessee both by statute and existing caselaw. *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 617 (Tenn. 2004).

Because arbitration agreements in private contracts are favored, the courts "play only a limited role in reviewing the decisions of arbitrators." *Williams Holding Co. v. Willis*, 166 S.W.3d 707, 710 (Tenn. 2005) (quoting *Arnold v. Morgan Keegan & Co.*, 914 S.W.2d at 448). The purpose of the Tennessee Uniform Arbitration Act, like the Federal Arbitration Act, is to "make the arbitration process effective, provide necessary safeguards, and provide an efficient procedure when judicial assistance is necessary." Uniform Arbitration Act (1956), Prefatory Note, 7 U.L.A. 100 (2009).[19]

Both the Federal Arbitration Act and the Tennessee Uniform Arbitration Act contain provisions governing the judicial review of arbitration awards. More particularly, they contain provisions with regard to the manner in which the parties to an arbitration may obtain appellate review of a trial court's order either confirming or vacating an arbitration award. The differences in the language of the Federal Arbitration Act and the Tennessee Uniform Arbitration Act regarding appellate review of a trial court's order have given rise to the current dispute between Mr. Smythe and Morgan Keegan.

The Federal Arbitration Act contains a list of appealable trial court orders, as well as a list of unappealable orders. Among the orders appealable under the Federal Arbitration Act are orders "confirming or denying confirmation of an award or partial award" and orders "modifying, correcting, or vacating an award." *See* 9 U.S.C.A. § 16(a)(1)(D), (E).[20] In contrast, the appeal provision in the Tennessee Uniform Arbitration Act provides that:

---

[19]The Tennessee Uniform Arbitration Act, which was enacted in 1983, is based on the version of the Uniform Arbitration Act adopted in 1956. *See Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 149 (Tenn. Ct. App. 2001). In 2000, the National Conference of Commissioners on Uniform State Laws published the Revised Uniform Arbitration Act. Tennessee has not adopted the revised act.

[20]The original Federal Arbitration Act lacked an appeal provision. *See* Act of July 30, 1947, Pub. L. No. 80-282, 61 Stat. 669. Section 16, originally designated as Section 15, was added as part of the Judicial Improvements and Access to Justice Act of 1988. Pub. L. No. 100-702, § 1019, 102 Stat. 4642, 4670-71 (1988). In 1990, Congress renumbered this provision from Section 15 to Section 16. Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 325(a)(1), 104 Stat. 5089, 5120 (1990). Thus, while the Federal Arbitration Act predates the Uniform Arbitration Act, the appeal provisions of the Uniform Arbitration Act (and the Tennessee Uniform Arbitration Act) actually predate the more artfully drafted appeal provisions in the Federal Arbitration Act.

(a) An appeal may be taken from:

(1) An order denying an application to compel arbitration made under § 29-5-303;

(2) An order granting an application to stay arbitration made under § 29-5-303(b);

(3) An order confirming or denying confirmation of an award;

(4) An order modifying or correcting an award;

(5) An order vacating an award without directing a re-hearing; and

(6) A judgment or decree entered pursuant to this part.

(b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

Tenn. Code Ann. § 29-5-319 (2012).

In the case before us, the trial court's March 16, 2010 order vacated the arbitration award and remanded the dispute for a new arbitration proceeding without expressly "denying confirmation." This order would clearly be appealable under the Federal Arbitration Act because Section 16(a)(1)(E) of the Act provides than an appeal may be taken from an order "modifying, correcting, or vacating an award."

The appealability of the March 16, 2010 order under the Tennessee Uniform Arbitration Act is another question. While the Tennessee Uniform Arbitration Act permits appellate review of a trial court's order vacating an arbitration award, Tenn. Code Ann. § 29-5-319(a)(5) limits appellate review to orders "vacating an award without directing a re-hearing." The March 16, 2010 order directed a rehearing.

Accordingly, we are confronted with two questions. First, we must decide whether the appeal in this case is governed by Tenn. Code Ann. § 29-5-319 or by Section 16 of the Federal Arbitration Act. If we determine that the appeal is governed by Tenn. Code Ann. § 29-5-319, then we must determine whether the March 16, 2010 order qualifies as an appealable order under Tenn. Code Ann. § 29-5-319.

**IV.**

We turn now to the question regarding the application of the Federal Arbitration Act and the Tennessee Uniform Arbitration Act to this case. We find that the Federal Arbitration Act is applicable to this dispute. However, we also find that the subject matter jurisdiction of the appellate courts to review the orders of a trial court reviewing an arbitration award is governed by Tenn. Code Ann. § 29-5-319.

**A.**

Morgan Keegan now suggests that we ought not consider the Federal Arbitration Act because Mr. Smythe failed to demonstrate that his investments in its RMK funds are transactions "involving [interstate] commerce" for the purpose of 9 U.S.C.A. § 2. We find no merit in this argument.

Most courts that have confronted this question have held that every securities contract is "a contract evidencing a transaction involving commerce" for the purpose of 9 U.S.C.A. § 2. The United States Supreme Court has held that the term "involving commerce," like the phrase "affecting commerce," encompasses "the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam). This power "may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. at 56-57 (internal quotation marks omitted). As one court aptly explained, it is now "axiomatic that the purchase and sale of securities relates to interstate commerce." *Prudential Sec. Inc. v. Hornsby*, 865 F. Supp. 447, 449 (N.D. Ill. 1994); *see also Wattenbarger v. A.G. Edwards & Sons, Inc.*, 246 P.3d 961, 968-69 (Idaho 2010).

Furthermore, as Morgan Keegan itself noted in its original brief to the Court of Appeals, the Federal Arbitration Act is "applicable here because this matter involves an arbitration proceeding in which the underlying transactions involved interstate commerce," and that "[s]ecurities transactions involve interstate commerce." Comparing the two arguments, Morgan Keegan had it right the first time.

**B.**

Because this is a FINRA securities case being heard in Tennessee courts, both the Federal Arbitration Act and the Tennessee Uniform Arbitration Act apply. The fact that both state and federal law apply in this case implicates the doctrine of preemption under the Supremacy Clause of the United States Constitution.

Article VI, Clause 2 of the United States Constitution states:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

-10-

As "the supreme law of the land," federal law sometimes preempts, or supplants, otherwise permissible state laws, rendering them inert and ineffectual. The scope of this preemption is a federal question, and thus the boundaries of the preemption doctrine are prescribed by United States Supreme Court precedent. *Leggett v. Duke Energy Corp.*, 308 S.W.3d at 852-54.

Courts recognize both "express preemption" and "implied preemption." Express preemption occurs when Congress explicitly defines the extent to which its enactments preempt state law. Implied preemption typically falls into one of three categories: direct conflict preemption; "purposes and objectives" conflict preemption; and field preemption. Conflict preemption is based on the principle that state law is preempted to the extent that it actually conflicts with federal law. *Leggett v. Duke Energy Corp.*, 308 S.W.3d at 853. Even when there is no direct contradiction, state law may be preempted by federal law when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Leggett v. Duke Energy Corp.*, 308 S.W.3d at 853-54 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

In analyzing whether federal law preempts a state statute, the courts should never assume that Congress has derogated state regulation. Instead, courts should start with the presumption that Congress does not intend to supplant state law and that the historic police powers of the states are not superseded by the federal act unless preemption was the clear and manifest purpose of Congress. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654-55 (1995); *see also Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008). This anti-preemption presumption erects a "high threshold;" implied preemption analysis requires much more than a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. ___, ___, 131 S. Ct. 1968, 1985 (2011) (quoting *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 111 (1992) (Kennedy, J., concurring in part and concurring in judgment)).

The United States Supreme Court has observed that "[t]here is no federal policy favoring arbitration under a certain set of procedural rules" and that "the federal policy is simply to ensure the enforceability . . . of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989). Noting that the Federal Arbitration Act contains no express preemption provision, the Court has also recognized that Congress did not intend to preempt the entire field of arbitration when it enacted the Federal Arbitration Act. *Volt*, 489 U.S. at 477.

The Federal Arbitration Act contains federal substantive law requiring the parties and the courts to honor arbitration agreements. *See Southland Corp. v. Keating*, 465 U.S. 1, 15 n.9 (1984). However, the Act does not prevent "the enforcement of agreements to arbitrate

under different rules than those set forth in the Act itself." *Volt*, 489 U.S. at 479. State arbitration rules may nevertheless be preempted to the extent that they "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Volt*, 489 U.S. at 477 (quoting *Hines v. Davidowitz*, 312 U.S. at 67).

Most courts that have addressed this issue have held that the Federal Arbitration Act's appeal provisions do not preempt state appeal provisions consistent with the Uniform Arbitration Act. These courts generally reason (1) that the Uniform Arbitration Act's appeal provisions are procedural rather than substantive, (2) that procedural provisions should not be preempted unless they stand as an obstacle to the full purposes and objectives of Congress, and (3) that the Uniform Arbitration Act's appeal provisions do not impede the Federal Arbitration Act's stated objective of ensuring the enforceability of arbitration agreements in private contracts. *See, e.g.*, *Southern Cal. Edison Co. v. Peabody W. Coal Co.*, 977 P.3d 769, 774-75 (Ariz. 1999); *Cronus Invs., Inc. v. Concierge Servs.*, 107 P.3d 217, 226 (Cal. 2005); *American Gen. Fin. Servs. v. Vereen*, 639 S.E.2d 598, 601 (Ga. Ct. App. 2006); *Saavedra v. Dealmaker Devs., LLC,* 2008-1239, p. 5 (La. App. 4 Cir. 3/18/09); 8 So. 3d 758, 762; *Wells v. Chevy Chase Bank, F.S.B.*, 768 A.2d 620, 628-29 (Md. 2001); *Weston Sec. Corp. v. Aykanian*, 703 N.E.2d 1185, 1188-89 (Mass. App. Ct. 1998); *Whitney v. Alltel Commc'ns, Inc.,* 173 S.W.3d 300, 306-07 (Mo. Ct. App. 2005); *Kremer v. Rural Cmty. Ins. Co.*, 788 N.W.2d 538, 545-47 (Neb. 2010); *Toler's Cove Homeowners Ass'n v. Trident Constr. Co.*, 586 S.E.2d 581, 584 (S.C. 2003); *Batton v. Green,* 801 S.W.2d 923, 927-28 (Tex. App. 1990); *see also Hubert v. Turnberry Homes, LLC*, No. M2005-00955-COA-R3-CV, 2006 WL 2843449, at *3-4 (Tenn. Ct. App. Oct. 4, 2006) (No Tenn. R. App. P. 11 application filed) (noting that, while 9 U.S.C. § 16 "establishes procedures for interlocutory appeals of federal court orders," the Tennessee Uniform Arbitration Act was enacted "to provide procedures for the enforcement of arbitration agreements in state court").[21]

Morgan Keegan points out that these cases involve appeals from trial court orders that preceded an arbitration hearing. While that observation is correct, Morgan Keegan has not explained why pre-arbitration appeals should be treated differently than post-arbitration appeals. We have determined that the statutes governing post-arbitration appeals are equally procedural in nature and, therefore, that the same analysis applies to the rules governing post-arbitration appeals as applies to pre-arbitration appeals.

---

[21]In contrast, some states have applied the Federal Arbitration Act's appeal provisions without any discussion of the corresponding state law. *See Pre-Paid Legal Servs., Inc. v. Anderson*, 2004-CA-01293-SCT (¶ 1), 918 So. 2d 634, 634 (Miss. 2005); *Carpenter v. Brooks,* 534 S.E.2d 641, 645 (N.C. Ct. App. 2000); *Dakota Wesleyan Univ. v. HPG Int'l, Inc.*, 1997 SD 30, ¶¶ 6-12, 560 N.W.2d 921, 922-24.

We agree with the Court of Appeals that the majority view on this point is correct. As the Court of Appeals noted, the purpose of the Federal Arbitration Act is to overrule the judiciary's long-standing refusal to enforce arbitration agreements according to their terms, and to place arbitration agreements on "the same footing as other contracts." *Morgan Keegan & Co. v. Smythe*, 2011 WL 5517036, at *16 (quoting *Volt*, 489 U.S. at 478). More specifically, the purpose of the Federal Arbitration Act's appeal provision is "to promote appeals from orders barring arbitration and limit appeals from orders directing arbitration." *Morgan Keegan & Co. v. Smythe*, 2011 WL 5517036, at *16 (quoting *Spell v. Labelle*, No. W2003-00821-COA-R3-CV, 2004 WL 892534, at *2 (Tenn. Ct. App. Apr. 22, 2004) (No Tenn. R. App. P. 11 application filed)). Although some cases may exist in which a trial court order would be appealable under the Federal Arbitration Act but not the Tennessee Uniform Arbitration Act, this hypothetical difference does not undermine the Federal Arbitration Act's objectives so seriously that it warrants preemption. Thus, if Tennessee's appellate courts have subject matter jurisdiction to hear appeals from orders such as the trial court's March 16, 2010 order, the grant of jurisdiction must be found in the Tennessee Uniform Arbitration Act, not the Federal Arbitration Act.

## V.

We now address whether the trial court's March 16, 2010 order vacating Mr. Smythe's arbitration award qualifies as an appealable order under Tenn. Code Ann. § 29-5-319(a). We hold that the order is an appealable order under Tenn. Code Ann. § 29-5-319(a)(3). To hold otherwise would be to elevate form over substance and would enable trial courts to shield their orders vacating arbitration awards from timely appellate review. Neither of these results is required by the Tennessee Uniform Arbitration Act.

## A.

At the outset, we will address the necessity of filing a separate petition to confirm an arbitration award when another party has already filed a petition to vacate the same award. While Tenn. Code Ann. § 29-5-312 authorizes a party to apply for an order confirming an arbitration award, it does not necessarily require such an application. Mr. Smythe did not file a separate petition to confirm the arbitration award in this case. However, in both his written response to Morgan Keegan's petition to vacate the award and his arguments to the court, he requested that the trial court confirm the award.

No provision of the Tennessee Uniform Arbitration Act requires parties to file competing petitions. To the contrary, Tenn. Code Ann. section 29-5-312 indicates that separate petitions need not be filed. The procedure under the statute is analogous to that specified in Tenn. R. App. P. 13. Once one party has perfected an appeal or has filed an application for permission to appeal, the other party or parties in the case are not required to

-13-

file cross-appeals, separate appeals, or separate applications for permission to appeal. Tenn. R. App. P. 13(a). The parties who have not perfected an appeal or filed a Tenn. R. App. P. 11 application may raise additional issues and seek relief on their own. Tenn. R. App. P. 27(b); *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012).

Thus, when the party dissatisfied with the arbitration award acts first by petitioning to vacate the award in accordance with Tenn. Code Ann. § 29-5-313, we do not construe the Tennessee Uniform Arbitration Act to require the party who prevailed in the arbitration to file a separate petition to confirm. In this scenario, it is entirely appropriate for the prevailing party to include its request to confirm the award in its response to the dissatisfied party's petition to vacate. This is precisely what Mr. Smythe did in this case.

**B.**

We turn next to the significance, if any, of the fact that the trial court's March 16, 2010 order does not explicitly deny confirmation of the arbitration award. Morgan Keegan insists that the lack of explicit language denying confirmation of the award necessarily means that the order cannot be considered "an order . . . denying confirmation of an award" for the purpose of Tenn. Code Ann. § 29-5-319(a)(3). This interpretation not only elevates form over substance, it throws a monkey wrench into the traditional principles of appealability.

Trial courts, as a general matter, speak through their orders and judgments. *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001). Like other written instruments, orders and judgments should be interpreted and enforced according to their plain meaning. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 359 (Tenn. 2008). When an order or judgment permits more than one interpretation, it should be construed with reference to the issues it was meant to decide, *In re Langenfeld*, 993 A.2d 232, 236 (N.H. 2010), and should be interpreted in light of the context in which it was entered, as well as the other parts of the record, including the pleadings, motions, issues before the court, and arguments of counsel. *Kiefer v. Rust-Oleum Corp.*, 916 N.E.2d 22, 29 (Ill. App. Ct. 2009); *see also Los Angeles Local Joint Exec. Bd. of Culinary Workers v. Stan's Drive-Ins, Inc.*, 288 P.2d 286, 290 (Cal. Ct. App. 1955) ("The rule with respect to orders and judgments is that the entire record may be examined to determine their scope and effect. . . .").

Court orders and judgments, like other documents, often speak as clearly through implication as they do through express statements. Accordingly, when construing orders and judgments, effect must be given to that which is clearly implied, as well as to that which is expressly stated. *Sosin v. Sosin*, 14 A.3d 307, 316 (Conn. 2011); *Dairyland, Inc. v. Jenison*, 207 N.W.2d 753, 754 (Iowa 1973); *State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell*, 719 S.E.2d 722, 737 (W. Va. 2011). Here, there can be no doubt that the trial court's March 16,

2010 order necessarily denied Mr. Smythe's request for confirmation when it granted Morgan Keegan's petition to vacate the award.

This conclusion is buttressed by Tenn. Code Ann. § 29-5-313(d), which states that "[i]f the application to vacate is denied . . . the court shall confirm the award." We see no reason to conclude that Tenn. Code Ann. § 29-5-313(d) operates only when the party who prevailed in the arbitration separately cross-petitions for confirmation. *See Hogue v. Popham Haik Schnobrich & Kaufman Ltd*., 753 A.2d 1014, 1017-18 (D.C. 2000) (explaining that, under the Uniform Arbitration Act, "the denial of a motion to vacate the award is the functional equivalent of an entry of the judgment," even when the trial court's order does not explicitly confirm the award). If a denial of vacatur automatically results in confirmation of the award, the converse must also be true – a grant of vacatur necessarily results in a denial of confirmation.

Furthermore, we are not persuaded that when the General Assembly enacted Tenn. Code Ann. § 29-5-319, it intended to enable trial judges to shield their orders from appellate review. Were we to adopt Morgan Keegan's proposed interpretation, a trial court could frustrate appellate review of its order vacating an arbitration award and directing a rehearing under Tenn. Code Ann. § 29-5-319(a)(3) simply by omitting any mention that it has denied the prevailing party's request to confirm the award. *See East Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 282 (Tex. 2010) (Jefferson, C.J., dissenting) ("Appellate jurisdiction should not hinge on whether the trial court, in conjunction with an order vacating an award and directing rehearing, denies rather than dismisses as moot a motion to confirm.").

## C.

We turn next to the relationship between appeals under Tenn. Code Ann. § 29-5-319(a)(3) and appeals under Tenn. Code Ann. § 29-5-319(a)(5). Morgan Keegan, arguing for a narrow construction of Tenn. Code Ann. § 29-5-319(a), insists that Tenn. Code Ann. § 29-5-319(a)(5) effectively trumps Tenn. Code Ann. § 29-5-319(a)(3) when an order denying confirmation of an award also vacates the award and directs a rehearing. We decline to construe the six subsections of Tenn. Code Ann. § 29-5-319(a) in a way that gives one subsection priority over another. Even if an order is not appealable under one subsection, it may be appealable under another. Thus, the fact that the trial court's March 16, 2010 order may not be appealable under Tenn. Code Ann. § 29-5-319(a)(5) does not mean that it is not appealable under Tenn. Code Ann. § 29-5-319(a)(3).

**D.**

As a final matter, we address the parties' contentions that their construction of Tenn. Code Ann. § 29-5-319 is more consistent with the policies underlying the Federal Arbitration Act and the Uniform Arbitration Act than their adversary's. In his Practice Commentary on the Federal Arbitration Act, Professor David Siegel explains that 9 U.S.C.A. § 16, which governs appellate review of trial court orders reviewing arbitration proceedings, is

> a pro-arbitration statute designed to prevent the appellate aspect of the litigation process from impeding the expeditious disposition of an arbitration. Its inherent acknowledgment is that arbitration is a form of dispute resolution designed to save the parties time, money, and effort by substituting for the litigation process the advantages of speed, simplicity, and economy associated with arbitration. Its theme is that judicial involvement in the process should be kept to the barest minimum to avoid undermining those goals.

David D. Siegel, *Practice Commentary: Appeals from Arbitrability Determinations*, 9 U.S.C.A. § 16, at 747. These observations also apply to the Tennessee Uniform Arbitration Act. *See Arnold v. Morgan Keegan & Co.*, 914 S.W.2d at 448 n.2 ("[T]he purpose of the Federal and Uniform Arbitration Act is the same: to promote private settlement of disputes, thereby bypassing the courts.").

Morgan Keegan asserts that had this dispute proceeded to the second arbitration panel as ordered by the trial court, the matter would have been resolved quickly and inexpensively and the delay and expense of this appeal would have been avoided. For his part, Mr. Smythe insists that Morgan Keegan would have been unable to participate expeditiously in a second arbitration because the company's lawyers were overburdened by the tidal wave of RMK fund arbitrations. Mr. Smythe also points out that a second arbitration would have delayed appellate review of the trial court's order vacating the first arbitration decision, and that the second arbitration proceeding could ultimately prove to be a waste of time and resources should an appellate court ultimately find that the trial court's March 16, 2010 order was erroneous.[22]

In our view, neither party's arguments decisively advance the interests of "speed, simplicity, and economy" more than the other's. In addition to these interests, we are concerned about the uncertainty regarding Mr. Smythe's ability to seek appellate review of

---

[22] *See East Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d at 275-76 (Willett, J., concurring) (describing the possible expense and delay of a do-over arbitration).

the trial court's March 16, 2010 order were this appeal denied and a second arbitration held. Significant questions arise. Should Mr. Smythe obtain a smaller award following the second arbitration, may he petition a court to vacate the second award? If so, could he also challenge the trial court's March 16, 2010 order and move to reinstate the original award? Would these motions be heard by the same trial judge who entered the March 16, 2010 order? If Mr. Smythe lost at the second arbitration, could he appeal and seek review of the March 16, 2010 order as part of his petition to vacate the second arbitration award? These procedural scenarios would launch this case into uncharted waters that the Tennessee Uniform Arbitration Act simply does not contemplate.

Our interpretation of Tenn. Code Ann. § 29-5-319(a) permits Mr. Smythe to appeal prior to a second arbitration proceeding. It charts a more appropriate course that avoids the possibility that an erroneous decision to vacate an arbitration award and order a do-over arbitration will evade appellate review entirely or will be reviewed and set aside only after the parties have invested time and resources in a second arbitration proceeding.

We note that our interpretation of Tenn. Code Ann. § 29-5-319(a) is consistent with an earlier decision by the Court of Appeals in which the appellate court reviewed a trial court order that vacated an arbitration award and ordered a second arbitration. *Boyle v. Thomas*, No. 02A01-9601-CV-00022, 1997 WL 710912 (Tenn. Ct. App. Nov. 17, 1997) (No Tenn. R. App. P. 11 application filed).[23] Without explicitly addressing the issue of subject matter jurisdiction, the Court of Appeals reversed the trial court and confirmed the arbitrator's award. *Boyle v. Thomas*, 1997 WL 710912, at *4. We also note that our interpretation of Tenn. Code Ann. § 29-5-319(a) places the appeal provisions of the Tennessee Uniform Arbitration Act in harmony with the appeal provisions in the Federal Arbitration Act.

Mindful that Tenn. Code Ann. § 29-5-320 (2012) prompts us to interpret the Tennessee Uniform Arbitration Act in a manner consistent with the other states that have adopted the Uniform Arbitration Act, we have compared our construction of Tenn. Code Ann. § 29-5-319 with similar appeal provisions in other states. In a case raising many of the same issues presented in this case, the Texas Supreme Court recently held that its counterpart to Tenn. Code Ann. § 29-5-319(a)(3)[24] permitted an appeal from an order vacating an

_____

[23]In that case, Mr. Boyle moved to vacate the arbitration decision, while Mr. Thomas moved to confirm it. *Boyle v. Thomas*, 1997 WL 710912, at *2. We have already held in this case that even though Mr. Smythe did not file a separate petition to confirm the arbitration, he appropriately requested confirmation in his response to Morgan Keegan's petition to vacate the arbitration award. Thus, the fact that Mr. Thomas separately requested confirmation while Mr. Smythe did not does not provide a basis for distinguishing *Boyle v. Thomas* from this case.

[24]*See* Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(3) (West 2011). In this regard, we place no

(continued...)

arbitration award and ordering a second arbitration before a new arbitrator. *East Tex. Salt Water Disposal Co v. Werline*, 307 S.W.3d at 274.[25] In its decision, the Texas Supreme Court held, as we have, that Texas's counterpart to Tenn. Code Ann. § 29-5-319(a)(5) is not an exception to its counterpart to Tenn. Code Ann. § 29-5-319(a)(3). *East Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d at 270-71.

In addition, the Texas Supreme Court squarely addressed the argument being made by Morgan Keegan in this case that a trial court's order vacating an arbitration award and ordering a second arbitration should not be appealable for the same reasons that a trial court's decision to grant a new trial is not appealable. The Texas Supreme Court found this analogy inapt because, in the context of appeals from arbitration awards under the Uniform Arbitration Act, trial courts are acting as appellate courts. *East Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d at 271-72.

We concur with this conclusion. While trial courts retain broad discretion with regard to granting new trials, *see Ali v. Fisher*, 145 S.W.3d 557, 564-65 (Tenn. 2004), the discretion of a trial court reviewing an arbitration award is severely circumscribed by statute. Parties who agree to arbitrate relinquish their right to obtain a judicial decision on the merits of their claim, and an arbitration award may be set aside only on the "very unusual circumstances" that fit within Tenn. Code Ann. § 29-5-313(a). *Arnold v. Morgan Keegan & Co.*, 914 S.W.2d at 448 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). Because a trial court reviewing an arbitration award functions more like an appellate body subject to an extremely narrow standard of review, we decline to equate an order vacating an arbitration award and ordering a new arbitration to an order granting a new trial.

We are mindful that our construction of Tenn. Code Ann. § 29-5-319(a), like the Texas Supreme Court's construction of Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(3), may be a minority position. *Compare East Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d at 272-74 (concluding that the decisions in other relevant jurisdictions "appear about evenly divided on the issue"), *with East Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d at 277-80 (Jefferson, C.J., dissenting) ("[I]t is accurate to say that the majority of states . . . have concluded that there is no appeal from an order that vacates an award, directs a rehearing, and denies confirmation."). We do not construe Tenn. Code Ann. § 29-5-320 as

---

[24](...continued)
legal significance on the fact that the Texas statute uses "or" to connect each appealable order, while Tenn. Code Ann. § 29-5-319(a) uses "and."

[25]In that case, Mr. Werline, like Mr. Thomas in *Boyle v. Thomas*, expressly petitioned the trial court to confirm the award. As we did with regard to *Boyle v. Thomas*, we do not find the fact that Mr. Werline filed a separate petition to confirm the award while Mr. Smythe included his request for confirmation in his response to Morgan Keegan's petition to vacate the arbitration award to be legally significant.

an inexorable command to make up a scorecard of the states that have accepted and rejected a particular interpretation of a provision of the Uniform Arbitration Act and then to follow the majority view without further discussion or analysis.

Rather, we have carefully considered the controlling statute in this case – Tenn. Code Ann. § 29-5-319(a)(3). We have determined that the plain language of this statute confers on Tennessee's appellate courts the subject matter jurisdiction over appeals such as this. An order that vacates an arbitration award and orders a second arbitration is an order "denying confirmation of an award" for the purposes of Tenn. Code Ann. § 29-5-319(a)(3), regardless of whether the party opposing the petition to vacate the award filed a separate cross-petition for confirmation under Tenn. Code Ann. § 29-5-312 or whether the trial court has expressly denied confirmation in its written order.

## VI.

Accordingly, we reverse the judgment of the Court of Appeals and find that the trial court's March 16, 2010 order is an appealable order "denying confirmation" of an arbitration award under Tenn. Code Ann. § 29-5-319(a)(3). We, therefore, remand the case to the Court of Appeals to consider the substantive merits of the issues properly raised by the parties. We tax the costs of this appeal to Morgan Keegan & Co., Inc., for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE