IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2019

FILED

04/15/2020

Clerk of the
Appellate Courts

## DAVID L. SNODDY v. DWAYNE D. MADDOX III AS ADMINISTRATOR AD LITEM OF THE ESTATE OF DONALD EVANS GILBRETH

**Appeal from the Circuit Court for Benton County**
**No. 17-CV-33     C. Creed McGinley, Judge**

_____

### No. W2018-01412-COA-R3-CV

_____

The plaintiff sued the administrator of the estate of his deceased business partner seeking a declaratory judgment over ownership of reel-to-reel tape recordings. The plaintiff claimed joint ownership of the tapes with the decedent. The estate administrator moved to dismiss on res judicata grounds, arguing that a federal court had previously determined that the decedent was the sole owner of the tapes. After a combined motion hearing and bench trial, the circuit court initially granted the motion to dismiss. The plaintiff then moved to alter or amend the judgment, and the court set aside its original ruling and granted the requested declaratory relief. We agree that res judicata does not apply. So we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Dwayne D. Maddox III, Huntingdon, Tennessee, Administrator of the Estate of Donald Evans Gilbreth, appellant.

Michael U. King, Huntingdon, Tennessee, for the appellee, David L. Snoddy.

**OPINION**

**I.**

**A.**

In 1984, Donald E. Gilbreth and David L. Snoddy were arrested on federal drug trafficking charges. *United States v. Nixon*, 777 F.2d 958, 962-63 (5th Cir. 1985). Mr. Gilbreth pledged a set of reel-to-reel tapes as security for both defendants' appearance bonds. The tapes contained early recordings of the late country music singer George Jones. Mr. Gilbreth represented to the court that, as sole owner of the tapes, he had the authority to pledge them as collateral. After a hearing to determine their value, the tapes were accepted by the federal court. *United States v. Snoddy*, No. CR 83-541, 2017 WL 2984775, at *1 (E.D. La. July 13, 2017).

The defendants were convicted. *Nixon*, 777 F.2d at 961-63. And after losing their appeals, they reported to prison. *See United States v. Snoddy*, 862 F.2d 1154, 1157 (5th Cir. 1989). The judge in the criminal action then cancelled the appearance bonds and ordered the court clerk to return the tapes to Mr. Gilbreth's attorney.[1] *See* Fed. R. Crim. P. 46(g) (requiring the court to exonerate the surety and release any bail when a bond condition has been satisfied or set aside). A receipt, signed by the attorney and the court clerk, indicated that the tapes were returned on September 11, 1986. *Snoddy*, 2017 WL 2984775, at *1.

That might have ended matters, but thirty years later, several reel-to-reel tapes were discovered in a safety deposit box assigned to the federal court clerk. They appeared to be the same tapes pledged by Mr. Gilbreth in 1984. A public records search revealed that Mr. Gilbreth had died in 2005. So the Chief United States District Judge for the Eastern District of Louisiana appointed an attorney, Gregory Grimsal, to "represent Mr. Gilbreth as an absentee defendant and either confirm his death, locate him, or identify his heirs and/or estate representatives." *Id.* The court also notified the other parties involved in the criminal action, namely Mr. Snoddy and the defense attorney, that the tapes had been discovered. Recognizing the court's duty to release the collateral, the court issued an order "that any person claiming ownership of and legal entitlement to the return of the pledged tapes file a motion and claim setting forth the nature and extent of their right and interest in the property on or before [April 18, 2017]." *Id.* at *2.

Sometime later, Mr. Grimsal reported that Mr. Gilbreth was indeed dead. He was survived by a widow and four children from previous relationships. From his widow,

---

[1] The same attorney represented both Mr. Gilbreth and Mr. Snoddy in the criminal action.

2

Mr. Grimsal learned that Mr. Gilbreth died without a will and his estate had never been probated. *Id.*

Unable to locate Mr. Gilbreth's children, Mr. Grimsal published a notice in five area newspapers. The legal notice instructed any potential heirs to file a motion asserting their claim to Mr. Gilbreth's property in the federal district court. All inquiries were directed to Mr. Grimsal's office. The sole inquiry was from William Yuille III, Mr. Gilbreth's stepson from a prior marriage. *Id.*

Ultimately, three individuals filed claims in the federal court: Mr. Gilbreth's widow, Mr. Yuille, and Mr. Snoddy. Janis Collett, the widow, claimed to be the representative of Mr. Gilbreth's estate, but she did not produce the necessary documentation to support her claim. Mr. Yuille, the sole surviving heir to his mother's estate, asserted that the tapes were marital property that should have been divided during his mother's divorce from Mr. Gilbreth. But Mr. Yuille had not sought or obtained a court order showing he was entitled to possession of the tapes. *Id.* at *3-4.

Mr. Snoddy, Mr. Gilbreth's co-defendant and former business partner, claimed he and Mr. Gilbreth jointly owned the tapes through their company, World-Wide Records, Inc. And Mr. Snoddy contended that Mr. Gilbreth's representation of sole ownership in 1984 was merely an attempt to "avoid complicating the bond proceeding." *Id.* at *4. Although Mr. Snoddy submitted affidavits from various individuals to corroborate his joint ownership claim, like the other claimants, he failed to produce a judgment of possession from a court of competent jurisdiction. *Id.*

In accordance with federal judiciary policy, the federal court declined to release the tapes to any of the claimants. As explained by the court, "[a]ll collateral for appearance bonds is held by the Clerk of Court subject to the administrative procedures of the United States Courts as contained in the Guide to Judiciary Policy, Volume 13, Chap. 3, § 320.35.50(c) and (e)."[2] *Id.* at *5. After an appearance bond is cancelled, the court must release the collateral securing the bond. Fed. R. Crim. P. 46(g). Mr. Gilbreth had represented to the court under oath that he was the sole owner of the tapes and had the authority to pledge them as collateral for the bonds. And none of the claimants had submitted evidence that Mr. Gilbreth had transferred ownership of the tapes before his death. *Snoddy*, 2017 WL 2984775, at *5.

---

[2] The Administrative Office of the federal courts issues guidelines for the daily operations of the federal judiciary. *Patrick v. U.S. Postal Serv.*, No. CV-10-0650-PHX-ECV, 2010 WL 4879161, at *4 (D. Ariz. Nov. 23, 2010). These guidelines are contained in the Guide to Judiciary Policy. *Id.* Only selected portions of the Guide are available to the public. *Id.* at *4 n.3.

3

Under these circumstances, the Guide to Judiciary Policy directed the court to return the collateral to "the individual who has been recognized by a court of competent jurisdiction over the property to be entitled to possession." *Id.* Because none of the claimants had produced the necessary documentation, the court extended the deadline to November 14, 2017. *Id.* at *6. After that, the tapes would be treated as unclaimed property. *Id.* The court later extended the deadline to March 14, 2018.

B.

Mr. Snoddy initiated formal probate proceedings for Mr. Gilbreth's estate in the Circuit Court for Benton County, Tennessee. The court appointed Dwayne D. Maddox III as administrator.

Mr. Snoddy then filed this action against the Administrator, seeking a declaration of joint ownership of the tapes held by the federal court clerk. The complaint alleged that "the [federal court] declined to decide the issue [of the ownership of the tapes] since no court of competent jurisdiction has declared Mr. Snoddy as owner of the tapes."

The Administrator disagreed with Mr. Snoddy's characterization of the federal court's order. The Administrator contended that the federal court had determined that Mr. Gilbreth was the sole owner of the tapes. So in a motion to dismiss, he argued that res judicata barred the claim of joint ownership. In support of his motion, the Administrator submitted a copy of the federal court's order.

The circuit court held a combined hearing on the pending motion[3] and the merits of the declaratory judgment action. At the conclusion of the hearing, the court reluctantly granted the Administrator's motion to dismiss. Based on the evidence presented at trial, the court was convinced that Mr. Snoddy jointly owned the tapes. But the court viewed the federal court order as an adjudication of Mr. Snoddy's joint ownership claim. So the court dismissed the complaint.

C.

Mr. Snoddy moved to alter or amend the judgment, arguing that the court had misconstrued the federal court decision. And he submitted a subsequent order from the federal court.

After receiving the necessary documentation from the Administrator, the federal court ordered the tapes released to the estate representative. The court directed Mr. Gilbreth's heirs and creditors and any other interested parties to pursue their claims

---

[3] Mr. Yuille also filed a motion to intervene as a party, which the court denied. Mr. Yuille has not appealed the court's decision.

4

in the state court proceeding. At Mr. Snoddy's request, the federal court reiterated that Mr. Snoddy's claim should "be asserted in a court of competent jurisdiction over Gilbreth's estate against the ownership claims of Gilbreth's heirs."

The circuit court set aside its original ruling and denied the motion to dismiss. The court also ruled, based on the proof presented at trial, that Mr. Snoddy and Mr. Gilbreth jointly owned the tapes.

## II.

### A.

The sole issue on appeal is whether the circuit court erred in rejecting the Administrator's res judicata defense. Although the defense was raised in a motion to dismiss, the court's ruling was based on matters outside of the pleadings. So the motion was converted to a motion for summary judgment. *See* Tenn. R. Civ. P. 12.02.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party has the initial "burden of persuading the court that no genuine and material factual issues exist and that it is . . . entitled to a judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

Here, the Administrator's motion was based on res judicata, an affirmative defense. *See* Tenn. R. Civ. P. 8.03. As the party with the burden of proof, the Administrator had to produce "evidence that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). If the moving party satisfies its burden, the nonmoving party must "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015) (quoting Tenn. R. Civ. P. 56.06).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Rye*, 477 S.W.3d at 250; *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Thus, we review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil

Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

B.

The preclusive effect of a federal court judgment is governed by federal law. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001); *see also Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 391 (Tenn. Ct. App. 2009). Res judicata is a rule of finality. *Brown v. Felsen*, 442 U.S. 127, 131 (1979). It "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Id.* In federal law, res judicata encompasses two interrelated concepts, claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

Claim preclusion, as the name suggests, prevents parties from relitigating the same claim or cause of action in successive lawsuits. *Id.* Federal courts apply a four-part test for claim preclusion. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). The parties in both lawsuits must be identical or in privity. *Id.* The first judgment must be "rendered by a court of competent jurisdiction." *Id.* The prior action must be "concluded by a final judgment on the merits." *Id.* And both lawsuits must involve the same claim or cause of action. *Id.* The United States District Court for the Eastern District of Louisiana is in the Fifth Circuit, which uses the transactional test in the Restatement (Second) of Judgments for determining whether the two causes of action are the same. *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 24 (AM. LAW INST. 1982). Under that test, the key inquiry is whether the two lawsuits are based on the same nucleus of operative facts. *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000).

Issue preclusion, on the other hand, "treat[s] specific issues of fact or law that are validly and necessarily determined between two parties as final and conclusive." *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment," the resolution of that issue "is conclusive in a subsequent action between the parties." RESTATEMENT (SECOND) OF JUDGMENTS § 27 (AM. LAW INST. 1982). For purposes of issue preclusion, whether the two causes of action are the same is irrelevant. *Taylor*, 553 U.S. at 892.

Our analysis begins with the language of the federal court order. We strive to give effect to the plain meaning of a court order. *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 359 (Tenn. 2008). If the language is clear, the literal meaning controls. *Id.* If the order is ambiguous, we will consider "the context in which it was entered" and construe the order "with reference to the issues it was meant to decide." *Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595, 608 (Tenn. 2013).

6

Federal judiciary policy required the return of collateral securing the defendants' appearance bonds once the bond conditions had been satisfied. The owner of record had died. The federal court specified that the key to unlocking the safety deposit box was "a certified copy of a judgment of [a] court of competent jurisdiction over the Estate of Donald E. Gilbreth establishing that the claimant has the right to the possession of the tapes." Absent that, the court would accept proper documentation from a court-appointed estate representative.[4] Even though none of the original claimants had the key, they were not precluded from returning to the federal court later should they obtain one.

And while the federal court discussed Mr. Snoddy's claim of joint ownership at some length, the court chose not to decide the issue. In the court's words,

> Snoddy does not dispute that Gilbreth is now deceased. Because Gilbreth's property is part of his estate, Snoddy's claim of a joint ownership interest in the tapes is to be asserted in a court of competent jurisdiction over Gilbreth's estate against the ownership claims of Gilbreth's heirs.

True to its word, the federal court later ordered the tapes released to the Administrator as representative of the estate of Mr. Gilbreth. And the court reiterated that Mr. Snoddy, along with any other heirs, creditors, and interested parties, could assert any claims to the tapes in "the state court having jurisdiction over the estate."

We conclude that res judicata is inapplicable here. Whether we view the Administrator's argument as one of claim preclusion or issue preclusion, we reach the same result. The two causes of action are not the same. The first action was a criminal prosecution on drug trafficking charges. The second was a declaratory judgment action to determine ownership of reel-to-reel tapes. These two claims do not arise out of the same nucleus of operative facts. And the federal court never determined ownership of the tapes. The court left that determination to another court.

### III.

We affirm the trial court's denial of the Administrator's motion. Res judicata did not preclude the trial court from declaring the ownership of the tapes held by the federal court clerk.

_____
W. NEAL MCBRAYER, JUDGE

---

[4] The court noted: "If a protracted legal dispute ensues over entitlement to possession, the probate court may appoint an estate representative to take possession of the tapes and to preserve them until a judgment of possession and ownership is rendered." *Snoddy*, 2017 WL 2984775, at *5 n.6.