IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 5, 2019 Session

## BRENDA GIBBS v. CAPITAL RESORTS GROUP, LLC, ET AL.

Appeal from the Chancery Court for Sevier County
No. 18-10-262       Telford E. Forgety, Jr., Chancellor

_____

No. E2019-00295-COA-R3-CV

_____

This appeal involves the denial of a motion to dismiss and to compel mediation and arbitration. The Trial Court determined that the plaintiff had properly challenged the mandatory arbitration provisions of the contract, including the delegation clause, on the basis of fraudulent inducement of the contract including the delegation clause. The Trial Court, therefore, denied the defendants' motion to dismiss and to compel mediation and arbitration. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY, and THOMAS R. FRIERSON, II, JJ., joined.

Janet Strevel Hayes and Preston A. Hawkins, Knoxville, Tennessee, for the appellants, Capital Resorts Group, LLC, and Capital Resorts Management, LLC.[1]

Matthew A. Grossman, Kevin A. Dean, and Brittany K. Coss, Knoxville, Tennessee, for the appellee, Brenda Gibbs.

---

[1] Janet Strevel Hayes submitted an appellate brief on behalf of the appellants. Thereafter, Preston A. Hawkins participated in oral arguments on behalf of the appellants and subsequently filed a notice of appearance. The notice of appearance did not state that Mr. Hawkins was substituting Ms. Strevel Hayes as counsel for appellants. Therefore, we have included both attorneys as counsel for appellants.

## OPINION

## Background

The plaintiff, Brenda Gibbs ("Plaintiff"), and the defendant, Capital Resorts Group, LLC, entered into the "Capital Resorts Club Purchase Agreement" (the "Contract") in August 2018. The Contract states as follows in relevant part:

34.    **Governing Law, Venue, and Jurisdiction.** This Agreement shall be construed in accordance with the laws of the State of Florida; excepting, however, the provisions relating to the Purchaser's right to cancel this Agreement and the escrow of Purchaser deposit payments made prior to closing, which provisions shall be construed, interpreted and enforced in accordance with laws of the state where Purchaser executes this Agreement.

\* \* \*

38.    **Mandatory Arbitration.** In the event of any bona fide dispute, claim, question, or disagreement arising from or relating to this Agreement in any manner or the breach thereof, the parties hereto shall use their best efforts to amicably settle the dispute, claim, question or disagreement. To this effect, and prior to filing a lawsuit or lodging any complaint with a governmental or non-governmental agency or other third party, the parties shall participate in at least (3) hours of mandatory mediation in Clearwater, FL, or such other location as may be mutually agreed upon by the parties, before a mediator mutually agreed upon by the parties, during which they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution reasonably satisfactory to both parties. Each party shall bear its own costs, except that the costs of the mediator shall be split equally between the parties. Any complaints or litigation initiated by a party hereto without first participating in mandatory mediation shall be subject to immediate withdrawal and/or dismissal and the party initiating same shall be responsible to pay all attorney costs, fees and expenses of the other party in obtaining such withdrawal and/or dismissal. If the parties do not reach a mutually agreeable solution to the dispute at mediation, then, upon notice by either party to the other, all disputes, claims, questions or differences shall be finally settled by binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its commercial arbitration rules, including the optional rules for emergency measures of protection, and judgment on the award rendered by the arbitrator(s) may be

entered in any court having jurisdiction thereof. Disputes under this clause shall be resolved by arbitration in accordance with Title 9 of the US Code (United States Arbitration Act[2]) and the Commercial Arbitration Rules of the American Arbitration Association. In addition to the foregoing, PURCHASER EXPRESSLY WAIVES ANY RIGHT OR AUTHORITY TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM OR ACTION, INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS. Arbitrators shall be appointed as provided in the AAA Commercial Arbitration Rules. The arbitration shall be conducted in Atlanta, Georgia. Face-to-face proceedings should be conducted at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances. If the parties are unable to agree on a location, the determination should be made by the arbitrator(s). The arbitrator(s) may grant any remedy or relief that the arbitrator(s) deems just and equitable within the scope of this Agreement. The arbitrator(s) will have no authority to award punitive or other damages not measured by the prevailing party's actual damages, except as may be required by statute. Each party shall bear its own costs and expenses and an equal share of the arbitrators' and administrative fees of arbitration. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties. Within thirty (30) days of receipt of any award (which shall not be binding if an appeal is taken), any party may notify the AAA of an intention to appeal to a second arbitral tribunal, constituted in the same manner as the initial tribunal. The appeal tribunal shall be entitled to adopt the initial award as its own, modify the initial award or substitute its own award for the initial award. The appeal tribunal shall not modify or replace the initial award except for manifest disregard of law or facts. The award of the appeal tribunal shall be final and binding, and judgment may be entered by a court having jurisdiction thereof.

(Footnote added.)

On October 19, 2018, Brenda Gibbs ("Plaintiff") filed an action in the Sevier County Chancery Court ("Trial Court") against Capital Resorts Group, LLC, and Capital Resorts Management, LLC (collectively, "Defendants"), as well as a representative of the

---

[2] The United States Arbitration Act is also referred to by the parties as the "Federal Arbitration Act" and "FAA."

defendant companies, Sean K. Hornbeck.[3] In her complaint, Plaintiff alleged fraud in the inducement of the Contract, a violation of the Tennessee Time-Share Act of 1981, a violation of the Tennessee Vacation Club Act of 1995, and a violation of the Tennessee Consumer Protection Act. Relying on these allegations, Plaintiff requested rescission of the Contract and monetary damages.

Concerning the factual allegations in her complaint, Plaintiff stated that she intended to sell her interest in a Capital Resorts timeshare due to financial concerns and the rising cost of maintenance fees. Plaintiff met with the defendant, Sean Hornbeck, who was an agent or representative of Defendants, and he offered to place her timeshare on the sales "Marketplace." Mr. Hornbeck informed Plaintiff that she should act quickly and that he needed to file the documents that day.

According to Plaintiff, Defendants and Mr. Hornbeck presented documents to Plaintiff for her signature, which they had represented to her was documentation relating to the sale of her timeshare. Plaintiff was not given sufficient time to read the documentation. Although Plaintiff believed she was selling her timeshare, the documentation provided to her actually operated to trade her existing timeshare as an equity credit toward the purchase of another timeshare through Capital Resorts. Plaintiff stated that she was unaware that she was purchasing another timeshare. According to Plaintiff, Defendants and Mr. Hornbeck further "misled and/or fraudulently induced" Plaintiff into opening a new credit card account with Bank of America "by presenting her with credit application documents to sign without disclosing that these documents were not for the sale of her Capital Resorts timeshare, but were, in fact, a credit card application and other documents incident to the *purchase* of a timeshare, and that Defendants intended to charge $7,000.00 in fees for that purchase to the Bank of America credit card." Plaintiff also alleged that Defendants and Mr. Hornbeck activated that credit card against Plaintiff's wishes or consent and charged $7,000 to the credit card. Additionally, Plaintiff alleged that when she discovered that she had been led to purchase another timeshare, she attempted to meet with Mr. Hornbeck during the statutorily prescribed ten-day rescission period, but he refused to meet with her.

Defendants filed their "Motion to Dismiss and to Compel Mediation and Arbitration" and their memorandum of law in support of their motion, in December 2018 and February 2019 respectively. In their motion, Defendants argued that Plaintiff and Capital Resorts Group, LLC, entered into an agreement in the Contract that "all claims arising from or related to the Contract would be resolved through good faith negotiation and mandatory mediation and through mandatory arbitration governed by the [Federal Arbitration Act ("FAA")] in the event the parties were unable to resolve their disputes

---

[3] Although named as a defendant in the action, Mr. Hornbeck has not filed an appellate brief or otherwise participated in the appeal.

through mediation." Defendants asserted that Plaintiff had filed the instant action "without using her best efforts to settle her disputes, without offering to participate in the required mediation and without attempting to negotiate a resolution of her claims in good faith." Defendants argued that the arbitration agreement in the Contract is valid, irrevocable, and enforceable. According to Defendants, the incorporation of the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules") required that the arbitrator determine the validity and enforceability of the arbitration agreement, not the court. This type provision is referred to as a delegation provision. In their memorandum of law, Defendants argued that the amended complaint contains no factual allegations regarding fraudulent inducement of the arbitration provision or delegation provision. Defendants further argue that Plaintiff had not specifically challenged the delegation provision of the arbitration agreement. Defendants argued in their motion that because "the parties agreed to mediate and arbitrate Plaintiff's claims in accordance with the FAA and the AAA's Commercial Arbitration Rules," the Trial Court should enforce the agreement, dismiss or stay the court proceedings, and compel mediation and arbitration. Defendants also requested an award of attorney's fees and expenses associated with the action.

In January 2019, Plaintiff filed a response to the motion to dismiss and to compel mediation and arbitration. In her response, Plaintiff argues that Defendants' motion ignores Plaintiff's allegations pled in the complaint for fraudulent inducement as to the Contract. According to Plaintiff, the FAA does not require arbitration "where the arbitration clause itself was specifically fraudulently induced." Therefore, Plaintiff asserted that the Court must consider Plaintiff's claim of fraudulent inducement before compelling her to litigate her claims in arbitration. Plaintiff requested that the Trial Court deny Defendants' motion.

Also in January 2019, Plaintiff filed an amended complaint with the allegation that Defendant induced Plaintiff into entering into the mandatory arbitration provisions contained in paragraph 38 of the Contract. Plaintiff's claims regarding fraud in the inducement of the contract were as follows:

> 44. Plaintiffs incorporate all paragraphs found above as though set forth herein verbatim.
>
> 45. As set forth above, Defendants and their representatives and agents made representations regarding the sale of Plaintiff's Capital Resorts timeshare. Most notably, Defendants represented that the voluminous documentation presented to Plaintiff to sign were for the sale of her Capital Resorts timeshare, and that executing those documents would result in the sale of that timeshare and the end of her payment obligations toward any timeshare.

46. These representations induced Plaintiff to sign the voluminous documentation attached hereto as Exhibits 1-7.

47. These representations specifically induced Plaintiff to enter into the "Mandatory Arbitration" clause at paragraph 38 of the Contract.

48. These representations made by Defendants and their representatives and agents were false.

49. The Defendants' representations to the Plaintiff regarding the sale of her Capital Resorts timeshare was material to her signing the voluminous documentation attached hereto as Exhibits 1-7.

50. Plaintiff relied upon Defendants' misrepresentations regarding the sale of her Capital Resorts timeshare in her decision to sign the voluminous documentation attached hereto as Exhibits 1-7.

51. Plaintiff has suffered substantial stress and anxiety as a result of Defendants' conduct which has adversely affected Plaintiffs physical health and well-being, among other damages outlined herein because of Defendants' misrepresentations.

52. Defendants' misrepresentations set forth in this Complaint were malicious, reckless, fraudulent and/or intentional, entitling Plaintiff to an award of punitive damages.

Defendants' motion to dismiss was heard by the Trial Court on February 1, 2019. At the conclusion of oral arguments, the Trial Court stated as follows in pertinent part:

> Counsel, the question to me is whether the [AAA] Rules are incorporated. The question to me is whether paragraph 38, which contains the arbitration provision and the [AAA] Rules, whether there was ever an agreement formed in the first place as to paragraph 38 containing both the arbitration provision and the [AAA] Rules.
>
> I take your argument, by the way -- if you look at paragraph 47 of the amended complaint, your argument is that, look, it just refers back to the same allegations that apply to the whole contract, and to some extent it does, but I tell you, they have specifically and, you know, these representations specifically induced plaintiff to enter into the, quote, mandatory arbitration clause at paragraph 38 of the contract. So they have

challenged it. They have challenged it with that sentence. They do challenge it. And honestly I think that's enough. I think that's enough.

The Trial Court thereafter entered an order on February 12, 2019, denying Defendants' motion. In its order, the Trial Court stated: "Upon consideration of the Motion, Plaintiff's response in opposition thereto, Defendant's Memorandum in Support of Motion to Dismiss and to Compel Mediation and Arbitration, the statements of counsel present, and the record in this cause as a whole, the Court will deny the Motion." Defendants timely filed a notice of appeal to this Court.[4]

On appeal, briefing was completed. Plaintiff subsequently filed a motion to dismiss the appeal on the basis that this Court does not have subject matter jurisdiction. According to Plaintiff, "(1) federal procedural statutes do not govern procedure in Tennessee State Courts and thus cannot confer additional jurisdiction upon this Court, and (2) the contract at issue in this case expressly adopts only the Federal Arbitration Act ("FAA") with respect to arbitration, adopts Florida law generally, and **does not** provide for the application of the Tennessee Uniform Arbitration Act in any event."

Defendants filed a response to the motion to dismiss the appeal and argued that this Court has subject matter to hear this appeal because Tennessee Code Annotated § 29-5-319 is applicable to this case. According to Defendants, when a matter concerning an arbitration agreement is governed by the FAA and filed in a Tennessee Court, the procedural pre-arbitration rules in the Tennessee Uniform Arbitration Act will apply. This Court deferred the issue of subject matter jurisdiction to the panel in this matter.

## Discussion

Although not stated exactly as such, Defendants raise the following issue for our review on appeal: Whether the Trial Court erred by denying Defendants' motion to dismiss and to compel mediation and arbitration. Our review is de novo upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Kelly*, 445 S.W.3d at 692.

We first address Plaintiff's motion to dismiss the appeal for lack of subject matter jurisdiction. In Plaintiff's motion to dismiss, it is unclear exactly which forum's procedural rules Plaintiff is asserting should be applied to this action or just that neither

---

[4] Although the motion hearing occurred on February 1, 2019, the court's order was not entered until February 12, 2019. Defendants' notice of appeal incorrectly states that they are appealing from the Trial Court's February 1, 2019 order.

the procedural law of the FAA or the Tennessee Uniform Arbitration Act should apply. However, Plaintiff's counsel acknowledged during oral arguments that Tennessee procedural law should apply to this action. Plaintiff, however, argues that the appropriate remedy for appeal would have been through an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9 and that none of the provisions of the Tennessee Uniform Arbitration Act are applicable to this case. We disagree.

The Tennessee Supreme Court has provided that "if Tennessee's appellate courts have subject matter jurisdiction to hear appeals from orders [regarding arbitration], the grant of jurisdiction must be found in the Tennessee Uniform Arbitration Act, not the Federal Arbitration Act." *Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 607 (Tenn. 2013). The Tennessee Uniform Arbitration Act provides an immediate appeal for the denial of a motion to compel arbitration at Tennessee Code Annotated § 29-5-319(a)(1).
Tennessee Code Annotated § 29-5-319 provides in relevant part: "(a) An appeal may be taken from: (1) An order denying an application to compel arbitration made under § 29-5-303 . . . ." Tennessee Code Annotated § 29-5-319 is a procedural statute and applies to the current matter before us. As such, we hold that this Court has subject matter jurisdiction over this appeal, and Plaintiff's pending motion to dismiss the appeal is denied.

We next address whether the Trial Court erred by denying Defendants' motion to dismiss and to compel mediation and arbitration. Defendants argue that the delegation clause is unchallenged and that the facts in the complaint are insufficient to support a challenge to either the delegation clause or the arbitration agreement. Upon review of the record, the Trial Court relied on the United States Supreme Court's opinion in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967). In that case, the Court applied the rule of severability and held that an arbitration agreement remained valid when the plaintiff had challenged the contract as a whole and not the arbitration agreement within the contract. *Id.* at 403-04. In that case, the Court stated as follows:

> Under [section 4 of the FAA], with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.' Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Id.*

The United States Supreme Court thereafter reaffirmed its decision in *Prima Paint Corp.* holding that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). As such, a plaintiff must challenge the making of the arbitration agreement specifically, and not just the contract generally, in order for the court to adjudicate the fraudulent inducement claim.

Additionally, the U.S. Supreme Court subsequently applied the severability rule from *Prima Paint Corp.* and enforced a delegation provision to arbitrate threshold matters relevant to the arbitration agreement when the contract consisted of a stand-alone arbitration agreement. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71-72 (2010). The Court determined that because the plaintiff had not challenged the delegation provision of the arbitration agreement contract, the Court would treat that provision as valid pursuant to section 2 of the FAA. *Id.* In *Rent-A-Ctr., W., Inc.*, the Court provided as follows:

> Here, the "written provision . . . to settle by arbitration a controversy," 9 U.S.C. § 2, that Rent-A-Center asks us to enforce is the delegation provision—the provision that gave the arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement[.]" The "remainder of the contract," *Buckeye, supra,* at 445, 126 S.Ct. 1204, is the rest of the agreement to arbitrate claims arising out of Jackson's employment with Rent-A-Center. To be sure this case differs from *Prima Paint, Buckeye,* and *Preston,* in that the arbitration provisions sought to be enforced in those cases were contained in contracts unrelated to arbitration—contracts for consulting services, see *Prima Paint, supra,* at 397, 87 S.Ct. 1801, check-cashing services, see *Buckeye, supra,* at 442, 126 S.Ct. 1204, and "personal management" or "talent agent" services, see *Preston* [*v. Ferrer*], [552 U.S.346,] 352, 128 S.Ct. 978 [(2008)]. In this case, the underlying contract is itself an arbitration agreement. But that makes no difference. Application of the severability rule does not depend on the substance of the remainder of the contract. Section 2 operates on the specific "written provision" to "settle by arbitration a controversy" that the party seeks to enforce. Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.

*Id.* (footnote and other internal citations omitted).

Shortly after the United States Supreme Court's decision in *Rent-A-Ctr., W., Inc.*, the Court issued its opinion in *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010), emphasizing that "[a]rbitration is strictly 'a matter of consent' and thus 'is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration' (internal citations omitted)." The Supreme Court clarified the holding in its previous opinions as follows:

> [O]ur precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, "the court" must resolve the disagreement.

*Id.* at 299-300 (internal citations omitted).

In the present case, the contract consisted of a timeshare agreement, which contained a "Mandatory Arbitration" clause at paragraph 38 of the Contract. Paragraph 38 of the Contract reads as follows:

> 38.     **Mandatory Arbitration.** In the event of any bona fide dispute, claim, question, or disagreement arising from or relating to this Agreement in any manner or the breach thereof, the parties hereto shall use their best efforts to amicably settle the dispute, claim, question or disagreement. To this effect, and prior to filing a lawsuit or lodging any complaint with a governmental or non-governmental agency or other third party, the parties shall participate in at least (3) hours of mandatory mediation in Clearwater, FL, or such other location as may be mutually agreed upon by the parties, before a mediator mutually agreed upon by the parties, during which they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution reasonably satisfactory to both parties. Each party shall bear its own costs, except that the costs of the mediator shall be split equally between the parties. Any complaints or litigation initiated by a party hereto without first participating in mandatory mediation shall be subject to immediate withdrawal and/or dismissal and the party initiating same shall be responsible to pay all attorney costs, fees and expenses of the other party in obtaining such withdrawal and/or dismissal. If the parties do not reach a mutually agreeable solution to the dispute at mediation, then, <u>upon notice by either party to the other, all disputes, claims, questions or differences shall be finally settled by binding arbitration administered by the American</u>

Arbitration Association ("AAA") in accordance with its commercial arbitration rules, including the optional rules for emergency measures of protection, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Disputes under this clause shall be resolved by arbitration in accordance with Title 9 of the US Code (United States Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association. In addition to the foregoing, PURCHASER EXPRESSLY WAIVES ANY RIGHT OR AUTHORITY TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM OR ACTION, INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS. Arbitrators shall be appointed as provided in the AAA Commercial Arbitration Rules. The arbitration shall be conducted in Atlanta, Georgia. Face-to-face proceedings should be conducted at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances. If the parties are unable to agree on a location, the determination should be made by the arbitrator(s). The arbitrator(s) may grant any remedy or relief that the arbitrator(s) deems just and equitable within the scope of this Agreement. The arbitrator(s) will have no authority to award punitive or other damages not measured by the prevailing party's actual damages, except as may be required by statute. Each party shall bear its own costs and expenses and an equal share of the arbitrators' and administrative fees of arbitration. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties. Within thirty (30) days of receipt of any award (which shall not be binding if an appeal is taken), any party may notify the AAA of an intention to appeal to a second arbitral tribunal, constituted in the same manner as the initial tribunal. The appeal tribunal shall be entitled to adopt the initial award as its own, modify the initial award or substitute its own award for the initial award. The appeal tribunal shall not modify or replace the initial award except for manifest disregard of law or facts. The award of the appeal tribunal shall be final and binding, and judgment may be entered by a court having jurisdiction thereof.

(Emphasis added.)

In her amended complaint, Plaintiff alleged that Defendants made fraudulent representations to Plaintiff to induce her into signing the Contract and that "[t]hese representations specifically induced Plaintiff to enter into the 'Mandatory Arbitration' clause at paragraph 38 of the Contract." Defendants argue that paragraph 38 of the

Contract contains a "delegation clause" requiring the parties to submit the issue of arbitrability to an arbitrator and that that provision is unchallenged by Plaintiff.

Concerning the delegation provision, the Contract reads: "Disputes under this clause shall be resolved by arbitration in accordance with Title 9 of the US Code (United States Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association." The very delegation clause itself refers to paragraph 38 as "this clause." We note that this "delegation clause" is buried within a long paragraph containing the remainder of the arbitration agreement. Although it is incredibly unclear that this clause is an agreement to delegate arbitrability issues to an arbitrator, we recognize that the parties' adoption of the AAA Rules in a contract can provide proof that the parties agreed to arbitrate the issue of arbitrability. *See Reunion W. Dev. Partners, LLLP v. Guimaraes*, 221 So. 3d 1278, 1280 (Fla. Dist. Ct. App. 2017). Although the mandatory arbitration agreement adopts the AAA Rules, which provide for arbitration of the issue of arbitrability, we find no proof in the record that Plaintiff was provided with a copy of these rules. Plaintiff ostensibly was expected to know that the incorporation of the AAA Rules, without being provided a copy thereof, required her to submit the threshold issue of arbitrability to an arbitrator.

Despite being much less than a model of clarity as to its being a delegation clause, we will treat the clause at issue as a delegation clause. Pursuant to *Prima Paint Corp.* and *Rent-A-Ctr., W., Inc.*, Plaintiff was required to challenge not only the arbitration agreement provision within the contract but also the delegation clause. Because a party must consent to the arbitration agreement, including the delegation provision, the court must resolve the disagreement if a party contests the formation of the arbitration agreement and the delegation provision. *Granite Rock Co.*, 561 U.S. at 299-300. Upon an examination of the Contract, both the arbitration agreement and delegation clause are included in paragraph 38 of the Contract. We note upon reviewing the Contract that Defendants essentially have buried the so-called delegation clause within paragraph 38 which is "Mandatory Arbitration." Plaintiff alleged in her amended complaint that Defendants' actions and misrepresentations "induced Plaintiff to enter into the 'Mandatory Arbitration' clause at paragraph 38 of the Contract." Upon a review of the record, we determine that Plaintiff's challenge of paragraph 38 of the Contract, combined with the location of the delegation clause being buried within paragraph 38, is sufficient to challenge not only the mandatory arbitration agreement but also the delegation clause. Plaintiff alleged that misrepresentations by the Defendants induced her to agree to paragraph 38 of the Contract. The delegation clause is contained in and a part of paragraph 38. The very delegation clause itself refers to paragraph 38 as "this clause." Defendants chose to head the entirety of paragraph 38 "Mandatory Arbitration" and cannot now fault Plaintiff for using the terminology and location of the delegation clause chosen by Defendants.

Defendants cite to the United States Supreme Court case of *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019), for the proposition that delegation clauses are valid and enforceable. That is not in dispute in this appeal. In that opinion, the Court states that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id.* at 531. The Supreme Court continues that a court must respect that agreement "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 529. We, as we must, accept the Court's holding that delegation clauses in a contract are enforceable and the court must respect the party's agreement. However, the Court in that case also pointed out that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists" and that "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." Although parties to a contract can delegate the authority to determine arbitrability issues to an arbitrator, Plaintiff in the present case has sufficiently challenged the validity of the delegation agreement itself, and according to *Henry Schein, Inc.*, the court is tasked with first determining the validity of the delegation provision of the Contract. If the Court determines that the delegation provision is not valid as challenged by the Plaintiff, the Court then must proceed to determine the validity of the arbitration provision as challenged by Plaintiff.

Defendants also cite to the United States Supreme Court's case of *Rent-A-Ctr., W., Inc.* arguing that Plaintiff had to specifically state in her complaint that she was challenging the delegation clause itself, separate from the allegations concerning the arbitration agreement. We find that *Rent-A-Ctr., W., Inc.* is distinguishable from the present case. The contract in *Rent-A-Ctr., W., Inc.* consisted of a stand-alone arbitration agreement. *Rent-A-Ctr., W., Inc.*, 561 U.S. at 71-72. In *Rent-A-Ctr., W., Inc.*, the parties' stand-alone arbitration agreement contained multiple provisions within the arbitration agreement that the parties would settle controversies between the parties by arbitration. *Id.* at 68. One section in the contract was titled, "Claims Covered by the Agreement," which provided that all disputes concerning the plaintiff's employment with the company would be resolved by arbitration. *Id.* Another section was titled, "Arbitration Procedures," and provided that the arbitrator had the authority to determine any dispute concerning the enforceability of the arbitration agreement. *Id.* The defendant in *Rent-A-Ctr., W., Inc.* was seeking to enforce the latter section by requiring the arbitrator to determine whether the arbitration agreement was valid. *Id.* In *Rent-A-Ctr., W., Inc.*, the district court concluded, and the appellate court affirmed, that the plaintiff had challenged only the contract as a whole and had not challenged the delegation provision within the contract. *Id.* at 71-72.

Unlike *Rent-A-Ctr., W., Inc.*, Defendants in this case placed the delegation provision within a long single paragraph 38, referred to as "this clause," containing the

arbitration agreement including the delegation clause, which Plaintiff then challenged the validity thereof by alleging that she had been fraudulently induced into entering. Defendants choose to bury the delegation clause in paragraph 38 concerning the arbitration agreement, and they must deal with the repercussions of their action. As the United States Supreme Court held in *Granite Rock Co.*, a party to a contract must consent to the arbitration agreement. This reasoning also applies to the delegation provision in the Contract. Plaintiff's amended complaint properly challenged both the arbitration agreement and the delegation provision, both of which are contained in paragraph 38 of the Contract.

We further disagree with Defendants' argument that the facts in the amended petition did not support a claim of fraudulent inducement of either the arbitration provision or the delegation clause. Plaintiff included in her complaint allegations that she was attempting to sell her timeshare due to financial concerns but that she was fraudulently induced into entering into the Contract and the "'Mandatory Arbitration' clause at paragraph 38 of the Contract." According to Plaintiff, Defendants' agent made specific false representations to Plaintiff concerning the sale of the timeshare and the contents of the voluminous paperwork she was provided. Plaintiff further alleged that due to the agent's misrepresentation, among others, that time was of the essence, she was not provided time to properly read the paperwork prior to signing. We find and hold that Plaintiff's allegations in the amended complaint were sufficient to challenge the validity of the arbitration agreement and the delegation clause of the Contract on the basis of fraudulent inducement.

Although Defendants argue that the delegation provision was unchallenged and that Plaintiff's complaint was insufficient to support a claim of fraudulent inducement as to the delegation clause, we find and hold, as did the Trial Court, that Plaintiff sufficiently pled in her amended complaint fraudulent inducement not only as to the entire Contract, but also the mandatory arbitration clause and the delegation clause. As such, the Trial Court did not err by denying Defendants' motion to dismiss and to compel arbitration and mediation.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the appellants, Capital Resorts Group, LLC, and Capital Resorts Management, LLC, and their surety, if any.

- 14 -

_____

D. MICHAEL SWINEY, CHIEF JUDGE