IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 2, 2020

## IN RE OWEN C.[1]

**Appeal from the Juvenile Court for Bradley County**
**No. J-16-291     Daniel Ray Swafford, Judge**

_____

### No. E2020-00863-COA-R3-PT

_____

This appeal involves the termination of both parents' rights to one of their minor children. Following a trial, the Bradley County Juvenile Court found that petitioners proved two statutory grounds for termination by clear and convincing evidence: abandonment by failure to visit and abandonment by failure to support. The court also found that termination was in the best interest of the child. Both parents appealed, arguing the abandonment was not willful. Having reviewed the record and applicable law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and JOHN W. MCCLARTY, JJ., joined.

Arthur Bass, Cleveland, Tennessee, for the appellant, Jimmy C.

Wilton Marble, Cleveland, Tennessee, for the appellant, Ashley B.

Andrew B. Morgan and Frank F. Pursell, Cleveland, Tennessee, for the appellees, James T. C., and Regan[2] A. C.

---

[1] This Court has a policy of protecting the identity of children by initializing the last names of the parties.

[2] Appellee's first name is spelled inconsistently in the record and court documents. It sometimes appears as "Regan" and other times as "Reagan." In her brief and filings, it is spelled "Regan," and we will spell it accordingly throughout this opinion.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

The appellants, Ashley B. ("Mother") and Jimmy C. ("Father") (collectively "Parents"), appeal the termination of their parental rights to Owen C. ("Owen"), born in December 2013.

Parents lived together for approximately 13 years in and around Franklin County, Indiana, and Hamilton County, Ohio. In early 2016, Parents decided to place their two minor children[3] with relatives because Parents were being investigated by Child Protective Services of Franklin County, Indiana. At the time, they lived in a residence with no electrical service and experienced financial and legal problems stemming from Father's use of illegal drugs. Father, who had a felony drug conviction, had been using heroin daily since Owen's birth, and Mother was using a "controlled substance."

In April 2016, Parents asked the maternal grandmother, Mary N. ("Grandmother"), and her husband, David N. ("Grandfather"), (collectively "Grandparents") to assume custody of both of their minor children, L.C. and Owen. When Grandparents informed them that they were not able to assume custody of both children, Parents placed L.C. with Grandparents and Owen with Father's son, James T.C., and his then girlfriend, Regan C., who is now his wife ("Petitioners"). To formalize the arrangement, Parents executed a Temporary Guardianship in Brookville, Franklin County, Indiana on April 19, 2016, that placed Owen in the temporary physical custody of Petitioners "for as long as necessary."

When Petitioners assumed custody of Owen they were living in Ohio, but, in June of 2016, Petitioners, Owen, and Regan's mother, Sharon M., moved to Polk County, Tennessee. Two months later, Petitioners moved to their current residence in Cleveland, Tennessee. Sharon M. has resided with Petitioners and Owen since the four of them moved to Tennessee.

After learning that Parents filed an incident report with the Sheriff's Department in Franklin County, Indiana on or about September 27, 2016, Petitioners filed an emergency petition for custody in the Juvenile Court of Bradley County, Tennessee. On October 3, 2016, the juvenile court entered an ex parte order giving temporary custody of Owen to Petitioners. The order also stated that Parents were to have no contact with Petitioners or Owen. Petitioners served process on Parents by certified mail. According to the certified mail receipt, Grandmother signed for the letter on October 27, 2016, and Mother testified

---

[3] Parents now have three minor children, L.C., Owen, and T.C., the youngest who was not yet born. Only Owen is at issue in this appeal.

to having seen the certified letter.[4] Neither Mother nor Father filed a response nor appeared for the dependent and neglect hearing, and, on January 24, 2017, the Bradley County Juvenile Court found Owen dependent and neglected as to the Parents and continued custody of Owen with Petitioners.

On May 15, 2018, Petitioners filed a petition to terminate the parental rights of Mother and Father. On July 17, Parents appeared in court and were appointed counsel. In September, Petitioners non-suited the original petition and, immediately thereafter, filed a new petition on September 24, 2018.[5] The petition alleged three grounds for termination as to both Parents: abandonment by failure to visit, abandonment by failure to support, and persistence of conditions.

Following a three-day trial held on October 28, 2019, January 27, 2020, and March 9, 2020, the juvenile court entered a final order on June 9, 2020, terminating the parental rights of both Mother and Father. Having heard testimony from Petitioners, Parents, Sharon M., Kathy B. (Mother's aunt), and Grandparents, the court found that the ground of persistence of conditions, Tennessee Code Annotated § 36-1-113(g)(3), had not been proven by clear and convincing evidence against either Parent but that there was clear and convincing evidence to prove the grounds of abandonment by failure to visit and abandonment by failure to support pursuant to Tennessee Code Annotated §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i).[6] The court also found that termination of the parental

---

[4] After receiving the certified letter, Parents consulted an attorney in Indiana and filed an Emergency Petition to return Child to Mother in the Franklin County (Indiana) Circuit Court. Mother testified that her attorney in Indiana recommended she find legal representation in Tennessee and that she called attorneys in Tennessee but did not have the money to retain one. After talks between the Bradley County trial court judge and the Indiana judge, the Indiana action was dismissed in favor of trial in Tennessee on the petition to terminate Parents' rights.

[5] Prior to July 1, 2018, the statutory definition of abandonment placed the burden of proof on the petitioner to show that the parent's failure to visit was "willful." Effective July 1, 2018, our General Assembly amended this section to remove willfulness as a required element of proof by petitioners and to make the absence of willfulness an affirmative defense available to parents for cases filed as of the amendment's effective date. *See* 2018 Tenn. Pub. Acts, Ch. 875, § 2 (H.B. 1856). Because the new petition was filed in September after the amendment took effect, this suit is governed by the revised statute that provides:

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

Tenn. Code Ann. § 36-1-102(1)(I).

[6] The trial court made the following findings of fact in support of its conclusion that the ground of

- 3 -

rights of both Mother and Father was in the best interest of Owen.

Both Parents appeal the court's conclusions that Petitioners proved the grounds of abandonment by failure to visit and to support, as well as that termination was in Owen's best interest.

## STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). However, that right is not absolute and may be terminated in certain circumstances. *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982); *State Dep't of Children's Serv. v. C.H.K.,* 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). In order to terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground for termination of parental rights has been established and that termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c). Clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence" and which "produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established." *In re Alysia S.,* 460 S.W.3d 536, 572 (Tenn. Ct. App. 2014) (internal citations omitted).

We review a trial court's findings of fact de novo upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). However, the heightened burden of proof in termination proceedings requires this court to make its own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016). A trial court's ruling regarding whether the evidence sufficiently supports termination is a conclusion of law that we review de novo with no presumption of correctness. *See id*.

---

persistence of conditions had not been proven by clear and convincing evidence against either Parent:

1.  [Parents] provided significant testimony as to how their lives were different now than when Petitioners obtained physical, and later legal, custody of the child. Both parents testified that they have maintained sobriety, that the other two children that reside with them are well taken care [of], and that their current home is appropriate.
2.  Petitioners did not provide, as was their burden, any significant evidence that [Parents], in their present-day iterations, have failed to make the adjustments to their circumstances, conduct, or conditions as to make it safe, and in the child's best interest, to return to their home.

- 4 -

I. GROUNDS FOR TERMINATION

The trial court found that Parents abandoned Owen by failure to visit and by failure to support as defined in Tennessee Code Annotated § 36-1-102(1)(A)(i), which states:

> For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents . . . of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents . . . either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

The petition to terminate parental rights was filed on September 24, 2018; therefore, the four-month period immediately preceding the filing was May 24, 2018, until September 23, 2018. This is the period to consider when analyzing Mother's actions; however, Father was incarcerated during some of this four-month period.[7] Therefore, the relevant period concerning Father is controlled by § 36-1-102(1)(A)(iv) rather than § 36-1-102(1)(A)(i).

At the time the Petition was filed in 2018, abandonment by an incarcerated parent was defined, in relevant part, as follows:

> [T]he parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has failed to visit or has failed to support or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration[.]

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2018). This section further states:

---

[7] The record is not clear as to exactly how much time Father served or when he served it. Father testified that he was sentenced to eighteen months, with twelve months suspended with probation, after pleading guilty to a felony, narcotics charge in Franklin County, Indiana, on April 24, 2018. He testified that he was incarcerated on that conviction for ninety days (although at trial there was some back-and-forth about how much time was served and how much was on probation). Mother, on the other hand, testified that Father was released from jail on July 2, 2018, which would make his incarceration fewer than ninety days if calculated from April 24 to July 2. The Franklin County, Indiana, guilty plea was made Trial Exhibit 12 and might have clarified the matter, but it is not part of the record on appeal.

> A finding that the parent has abandoned the child for a defined period in excess of four (4) months that would necessarily include the four (4) months of nonincarceration immediately prior to the institution of the action, but which does not precisely define the relevant four-month period, shall be sufficient to establish abandonment[.]

*Id.* Therefore, we will analyze the grounds with these relevant periods in mind.

### 1. Abandonment by failure to visit

Parents concede that they have not visited with or spoken to Owen since Petitioners moved Owen to Tennessee in June of 2016, which is a three-year period of time that greatly exceeds the relevant four-month period for both Parents. Thus, unless Mother and Father can establish that their failure to visit was not willful, the ground is established.

A parent who failed to visit with the child for the statutory period may assert the absence of willfulness as an affirmative defense that the parent must prove by a preponderance of the evidence. Tenn. Code Ann. § 36-1-102(1)(I). Here, Parents contend their failure to visit was not willful because Petitioners and Sharon M. thwarted their efforts.

> Willfulness in the context of termination proceedings does not require the same standard of culpability as is required by the penal code, nor does it require that the parent acted with malice or ill will. Rather, a parent's conduct must have been willful in the sense that it consisted of intentional or voluntary acts, or failures to act, rather than accidental or inadvertent acts.

*In re Braxton M.*, 531 S.W.3d 708, 722 (Tenn. Ct. App. 2017) (citations omitted).

Parents testified that they did not have Petitioners' address in Tennessee, and Petitioners and Sharon M. intentionally interfered with Parents' attempts to visit Owen. Petitioners denied this allegation. Regan testified that Parents have always had Petitioners' contact information, including telephone numbers that have remained unchanged since they assumed custody of Owen in 2016. James T.C. stated he was in contact with Father by text message a couple of times in the first few weeks after Petitioners moved with Owen to Tennessee.

Father testified that he never called James T.C. because he "never thought about it." In August 2016, Mother sent a text to Sharon M. informing her that she was planning a family trip to Florida and wished to pick up Owen and have him go with them. Sharon M. testified that she and Petitioners objected to Owen being taken to Florida but agreed to meet so that Parents could visit with Owen. Mother testified that Petitioners did not

cooperate in setting up the trip or a meeting to allow visitation. Conversely, Regan testified that it was Mother who did not respond to their communication about visiting Owen on the way to Florida. The communication regarding the Florida vacation was the last attempt by either Parent to arrange visitation and that was in August 2016, which was almost two years prior to the filing of the petition.

Parents also contend that visitation was prevented by the no-contact provision in the ex parte order issued by the Bradley County Juvenile Court on October 3, 2016, which states:

> Upon the sworn petition of and for good cause, it is hereby,
>
> ORDERED, ADJUDGED AND DECREED that Petitioners have shown by the Petition good cause for this court to issue an Order Ex Parte pending further hearing:
>
> It is further ORDERED that Petitioners shall be granted physical and legal residential placement or custody of the minor child Owen C[.], pending further hearing;
>
> It is further ORDERED that Respondents Ashley B[.] and Jimmy C[.] shall have no contact with the minor child pending further orders of the court;
>
> It is further ORDERED that Respondents shall not interfere with the minor child's caregivers;
>
> It is further ORDERED that Respondents Ashley B[.] and Jimmy C[.] shall not come about, contact, threaten, assault, threaten to assault, or communicate either directly or indirectly with the Petitioners for any reason.

Mother testified that she learned of the no-contact order in late October 2017, after Grandmother signed for the notice that was delivered by certified mail. Mother then consulted an attorney in Indiana, who filed an Emergency Petition to Return Child to Mother in Indiana ("the Emergency Petition") that both Mother and Father signed. Mother testified that the Indiana attorney told her she needed a Tennessee attorney, but Parents could not afford to hire one.

The trial court's order terminating parental rights references the dependent and neglected order that followed an evidentiary hearing on January 24, 2017, of which Parents had proper notice.[8] While the January 2017 order is not in the record before us, the order terminating parental rights states:

> The [Dependency and Neglect] Order entered by this Court on that day did not mention, extend, or otherwise reference the prior no contact language.

---

[8] Mother and Father admit that they neither filed a response nor appeared for that hearing.

"Trial courts, as a general matter, speak through their orders and judgments."
[*Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 608 (Tenn. 2013)].
The fact that no-contact language was not mentioned is evidence that the
Court did not find enough evidence to justify the extension of the no contact
language. To operate otherwise would mean that any issue not affirmatively
addressed by an adjudicatory order would still be controlled indefinitely by
an ex parte order that was issued with a significantly lower burden of proof.
This cannot be, and is not, how the system works.

Based on this reasoning, the court concluded that the no-contact provision expired and
ceased following the January 24, 2017 hearing and the entry of the ensuing order; therefore,
Parents were no longer precluded from contacting Petitioners or attempting to visit with
Owen.

Parents had the benefit of legal counsel in Indiana as early as October 2016 when
they filed the Emergency Petition for the return of Owen. Moreover, the Emergency
Petition reveals that Parents knew the Petitioners' address, and the ex parte order included
the identity and contact information for Petitioners' attorney in Tennessee; yet, neither
Parents nor their attorney attempted to contact Petitioners' attorney or the court clerk.
Indeed, neither Parent took any action in Tennessee courts until May 22, 2018, when
Mother filed a pro se petition in Bradley County, Tennessee to return custody of Owen to
her, which filing followed Petitioners' filing of the original petition for termination on May
15, 2018.

When a parent's attempts to visit the child are thwarted by the acts of others, the
failure to visit may not be willful. *See In re M.L.P.*, 281 S.W.3d 387, 392 (Tenn. 2009).
While Parents assert it was not their fault they did not visit Owen, they have offered no
evidence that they made any attempt to arrange visitation. Indeed, Mother and Father both
testified that they never reached out to Petitioners' attorney nor to Petitioners about seeing
Owen after August of 2016 when Mother texted Sharon M. about the Florida vacation.
Based on the foregoing and other evidence in the record, we conclude that Parents have
failed to establish the affirmative defense of lack of willingness.

It is undisputed that neither Parent visited Owen during the period from June 2016
through the filing of the petition on September 24, 2018, a period that includes the requisite
four-month period for Mother, *see* Tenn. Code Ann. § 36-1-102(1)(A)(i), and four months
of Father's non-incarceration immediately prior to the institution of this action, *see* Tenn.
Code. Ann. § 36-1-102(1)(A)(iv) (2018). Accordingly, we affirm the trial court's ruling
with regard to this ground.

2. Abandonment by failure to support

The trial court also found that Parents abandoned Owen because they "failed to support or . . . to make reasonable payments toward the support of the child" during the four-month period immediately preceding the filing of the petition to terminate parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i). "A party seeking termination of parental rights must prove by clear and convincing evidence that the opposing party had the capacity to pay support but made no attempt to do so and did not possess a justifiable excuse." *In re Adoption of Angela E.*, 402 S.W.3d 636, 641 (Tenn. 2013). There was no court ordered support in this case; however,

> [i]t is well settled in Tennessee that biological parents must, as a general matter, support their children until they reach the age of majority. The parent's obligation to support, as well as the child's right to support, exist regardless of whether a court order exists, and regardless of whether the parents were ever married.

*In re Apex R.*, 577 S.W.3d 181, 204 (Tenn. Ct. App. 2018), *appeal denied* (Oct. 1, 2018) (internal quotations and citations omitted). "Every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children[.]" Tenn. Code Ann. § 36-1-102(1)(H).

There is no dispute that Parents visited Owen between April and June 2016 about once weekly. Petitioners testified that Parents provided a bag of clothing for Owen, and they sometimes brought Happy Meals and toys to the visits. Otherwise, there is no proof of the Parents providing any support for Owen during the months before the move to Tennessee. Parents admitted in their testimony that neither of them supported Owen while he was living in Tennessee from June 2016 forward.

Parents assert that their failure to support was not willful, an affirmative defense for which they carry the burden of proof. *See* Tenn. Code Ann. § 36-1-102(1)(I). Failure to pay support is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)).

Parents had the capacity to provide support for Owen. Parents testified that Mother was a stay-at-home parent. Mother testified that she chose to stay home with her other two minor children because she did not want them out of her sight. When asked what her source of income was, she answered, "Jimmy C[.]" Father testified that he had a reliable income of $22 per hour for the past three years, and his work was full time with occasional overtime. He stated that he had worked for the same employer for 12 years. He further testified that he earned $50,000 in 2019. The only specific evidence in the record with respect to Parents' expenses is their lease showing monthly rent of $585, but Father

testified that he had no trouble paying the bills and meeting the needs of the family. Parents, again, point to the no-contact language of the ex parte order as evidence that their failure to support Owen was not willful. This argument is unavailing for the reasons set forth in the previous section. Moreover, "[t]he parental duty of visitation is separate and distinct from the parental duty of support[; t]hus, attempts by others to frustrate or impede a parent's visitation do not provide justification for the parent's failure to support the child financially." *In re Audrey* 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005) (citation omitted). Therefore, we find that the evidence in the record clearly and convincingly proves that Parents had the capacity to support Owen, made no attempt to do so, and lack a justifiable excuse for the period from June 2016 to September 23, 2018, a period which necessarily includes the four consecutive months prior to Father's incarceration. *See* Tenn. Code. Ann. § 36-1-102(1)(A)(iv) (2018). Accordingly, we affirm the trial court's finding on this ground.

Having found that one or more grounds exist for terminating both Parents' parental rights, we shall consider Owen's best interests pursuant to the relevant factors in Tennessee Code Annotated § 36-1-113(i).

## II. THE CHILD'S BEST INTERESTS

"In addition to presenting clear and convincing evidence establishing at least one statutory ground warranting the termination of a biological parent's parental rights," a petitioner must "present clear and convincing evidence that terminating the parent's rights is in the best interests of the affected child." *In re Bernard T.*, 319 S.W.3d 586, 606 (Tenn. 2010); Tenn. Code Ann. § 36-1-113(c). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *In re Angela E.*, 303 S.W.3d 240, 254 (Tenn. 2010). Clear and convincing evidence "establishes that that truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence," and "[i]t produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted).

While the combined weight of the evidence must meet the clear and convincing standard, facts considered in the best-interest analysis need be proven only "by a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). "The child's best interests must be viewed from the child's, rather than the parent's, perspective." *In re Audrey S.*, 182 S.W.3d at 878. "When the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child [.]" Tenn. Code Ann. § 36-1-101(d).

Mother contends that the applicable best interest factors weigh against the

termination of her parental rights. She reasserts her previous argument that the no-contact order prevented her from visiting and from supporting Owen. Father's argument regarding Owen's best interests is based on his allegation that "Petitioners had no interest in the rehabilitation of the parents or any desire to ever return Owen C. to his parents after they received physical custody." He points to the move to Tennessee and the no-contact order to support this position. However, his argument centers primarily on the effects on Parents, rather than addressing Owen's best interests.

Tennessee Code Annotated § 36-1-113(i) provides a list of nine non-exclusive factors for courts to consider when making the best interests determination; those factors are:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). The analysis does not turn on "whether the sum of the

factors tips in favor of or against the parent." *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004). Instead, "[t]he relevancy and weight to be given each factor depends on the unique facts of each case." *Id.* "Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *Id.*

The trial court found that "Petitioners did not provide, as was their burden, any significant evidence that Respondents, in their present-day iterations, have failed to make the adjustments to their circumstances, conduct, or conditions as to make it safe, and in Owen's best interest, to return to their home." *See* Tenn. Code Ann. § 36-1-113(i)(1). Parents testified that they have maintained sobriety, and they have an apartment that has heat and electricity where they live with their other two minor children. Father testified that he pays the bills for the family, but, as is established above, that does not include supporting Owen, only their other children. Parents testified that they have regained custody of their middle child, L.C., who was previously in the custody of Grandparents, but that was a private arrangement and L.C.'s return to Parents fails to establish that Parents have made any improvements. Grandparents also testified that Parents were drug-free, and Grandparents were confident of Parents' ability to care for their children. Although Parents' testimony is less than compelling, we agree with the trial court's finding that factor (1) weighs against termination.

The record contains no evidence, such as a permanency plan, that would bear on factor (2). *See* Tenn. Code Ann. § 36-1-113(i)(2). Therefore, factor (2) is inapplicable.

The trial court found that Parents have not provided sufficient evidence to justify their failures to visit or to attempt visitation for three years. *See* Tenn. Code Ann. § 36-1-113(i)(3). It is undisputed that Parents have not seen or spoken with Owen in over three years. Petitioners testified that they did not change their cell phone numbers after moving to Tennessee, and Parents had those numbers. Father stated that he never called because he "never thought about it." Parents testified that they did not know Petitioners' address in Tennessee; however, Parents were aware of Petitioners' address in Cleveland, Tennessee, since at least October 2016, when both Parents signed the Emergency Petition in Indiana, as Mother's and Father's signatures appear on the same page as Petitioners' address. Parents testified that they lacked the financial means to pursue visitation through the courts; yet, their testimony suggests otherwise: Father testified that he has had a good income for 12 years or more, with the same pay rate of $22 per hour for the past three years, and Mother is able to stay home with her children in reliance on Father's income. The record supports the trial court's finding that Parents have not provided sufficient evidence to justify their failures to visit or to attempt visitation for three years. *See* Tenn. Code Ann. § 36-1-113(i)(3). Therefore, we agree with the trial court's finding that factor (3) weighs in favor of termination.

The trial court found that factor (4) favored termination based on the fact that Owen has no meaningful relationship with Parents. *See* Tenn. Code Ann. § 36-1-113(i)(4). Owen was two and a half years old when Parents placed him in Petitioners' custody in April 2016, and Parents have not seen or spoken to Owen since June of that year. Petitioners and Sharon M. testified that Owen calls Petitioners "Mom" and "Dad." Regan testified that Owen "knows that he has another mom and dad," but he had not mentioned them in months, and he had never expressed to her a desire to see Parents. Parents recognized in their testimony that Owen might need a gradual reintroduction to them and would likely need counseling. Based on the evidence presented, there is no basis to believe that Owen has a meaningful relationship with Parents. *See* Tenn. Code Ann. § 36-1-113(i)(4). Therefore, we agree with the trial court's finding that factor (4) weighs in favor of termination.

The trial court found that "the child has been well cared for and has formed an emotional bond with the Petitioners." The record supports this conclusion. Regan testified that Petitioners have been responsible for all parenting of Owen since they gained custody of him. Petitioners are both employed and financially stable. Sharon M. and Regan testified that Owen had some rotten and broken teeth when he came to them. Regan testified that they arranged for Owen's dental surgery and caps on his teeth and that he now receives regular dental and medical care. Petitioners testified that Owen attended pre-school and is now in kindergarten and also attends a YMCA after-school program where he is doing well; that they attend Owen's school functions and read with him at night; and that they love Owen and wish to adopt him. James T.C. expressed concern that a significant change would be difficult for Owen, describing him as "very OCD." Given the length of time that Owen has been with Petitioners, his age, and the testimony presented, we conclude that a change of caretakers and physical environment is likely to have a negative impact on Owen's well-being. *See* Tenn. Code Ann. § 36-1-113(i)(5). We, therefore, agree with the trial court's finding that factor (5) weighs in favor of termination.

The trial court found that there was no evidence to suggest that Parents are neglectful of the children now in their care. *See* Tenn. Code Ann. § 36-1-113(i)(6). We agree. Therefore, factor (6) does not favor termination.

According to the testimony of Parents, of Mother's aunt, Kathy B., and of Grandparents, Parents' current home is safe and drug-free. *See* Tenn. Code Ann. § 36-1-113(i)(7). Petitioners have presented no evidence to dispute that testimony. Therefore, factor (7) does not favor termination.

While Father testified that he received mental health counseling in 2017, there is no significant evidence in the record regarding the mental health of either Parent. *See* Tenn. Code Ann. § 36-1-113(i)(8). Therefore, factor (8) is inapplicable.

The trial court found that Parents had the means to support Owen but have not done so. *See* Tenn. Code Ann. § 36-1-113(i)(9). Parents admit they have paid no child support

during the entire time Owen has been with the Petitioners. Regan testified that Parents provided a bag of clothing and some diapers when Owen was placed with Petitioners in 2016, and Parents would bring fast food and toys when they visited Owen in the time between April 2016 and June 2016; however, it is undisputed that there has been no support of any kind since. As discussed in the ground of abandonment by failure to support, Parents testified that Mother stayed at home to care for their other two children, and she relied on Father for income. Father testified that he earned a good salary and had no trouble paying the bills. Therefore, Parents had the means to support Owen but have not done so. Accordingly, we agree that factor (9) weighs in favor of termination.

Considering the relevant factors from Owen's point of view, we find it especially significant that he has lived with Petitioners during three formative years; that Parents have not made reasonable attempts to visit or support him during that time; that Owen has no meaningful relationship with Parents; that he has bonded with Petitioners; and that being taken from the care of Petitioners and returned to Parents would affect him negatively.

The preponderance of the evidence supports the trial court's findings of fact, which clearly and convincingly establish that termination of Parents' parental rights is in Owen's best interests. Accordingly, we affirm the trial court's decision to terminate Mother's and Father's parental rights.

**IN CONCLUSION**

Based on the foregoing, we affirm the judgment of the trial court. Costs of this appeal are taxed to appellants, Jimmy C. and Ashley B., jointly and severally, for which execution may issue if necessary.

_____

FRANK G. CLEMENT, JR., JUDGE

- 14 -